[Kansas City, Memphis & Birmingham R. R. Co. v. Webb.]

97  157|
142  130|

# Kansas City, Memphis & Birmingham R. R. Co. v. Webb.

*Action by Employe for Damages on Account of Personal Injuries.*

1. *Rulings on demurrer must be shown by record.*—When the record fails to show that the lower court made any ruling on demurrers interposed to the complaint, their sufficiency will not be considered on appeal.

2. *Evidence of speed of trains.*—The rules or customs which regulate the speed of railroad trains, not being a matter of common knowledge, are a legitimate subject of proof, hence, a witness may be allowed to testify what was the usual speed of running trains on a spur-track nearly two miles long.

3. *Diligence in discovering defects in railway tracks.*—Where the plaintiff, in an action for injuries sustained by derailment of an engine in his charge, counts upon alleged defects in the track of the railway as the cause of the injury, he may be allowed to show that such defects had existed for several weeks before the occurrence of the event which produced the injury.

4. *Hypothetical question based on evidence, proper.*—Where there is evidence that a certain thing had been done three or four times a day for a month and a witness is asked what would be its effect if done a hundred times, the court cannot affirm that there is no evidence on which to base such hypothetical question.

5. *Argument of counsel; when not subject of revision.*—An improper remark of counsel in argument to the jury being withdrawn on objection, cannot form the basis of an exception, when no ruling of the lower court is sought in regard to it by an instruction to the jury to disregard such remark.

6. *Charge ignoring part of the evidence improper.*—There being some proof tending to sustain the allegations of a complaint that there were defects causing the injury in a switch, as well as in another part of a railway track, charges confining the inquiry of the jury to the unsafe condition of the switch alone, are properly refused.

7. *Charges narrowing liability.*—In such case charges which separately assert that the defendant is not liable for the negligence of its road-master, nor that of its section-foreman, are properly refused when the evidence tends to show that these officials were charged by defendant with performance of duties in keeping its track in good condition.

8. *Charge opposed to tendency of the evidence.*—A charge requested asserting that a railway track was properly constructed is properly refused when there is evidence tending to show that it was not properly constructed.

9. *Charge complex and confusing.*—A charge which commits to the jury without guide the duty of determining what facts are necessary to be found in making their verdict and is so complex that it is not readily understood, is properly refused.

10. *Charge introducing new issues.*—A charge asserting that the ju-

ry should weigh the testimony of railroad witnesses as they would that of witnesses in other employments, introduces a subject of investigation foreign to the issue, and is properly refused.

APPEAL from Jefferson Circuit Court.

Tried before Hon. JAMES B. HEAD.

This was an action by Powhatan E. Webb against the Kansas City, Memphis & Birmingham Railroad Company for damages inflicted by the derailment of an engine in charge of plaintiff, alleged to have been caused by defects in a switch and by a defect in the construction of the track on a curve. There was testimony on the trial tending to show that the road-master and the section-foreman of defendant had knowledge of the defects in the track and that they were entrusted by the defendant with the supervision of its track at the point where the injury was inflicted. The first six charges requested and refused by the court were general charges in favor of the defendant on the first, second, third, fourth, sixth and eighth counts of the complaint.

The defendant also excepted to the refusal of the court to give the following charges : (7) That it is the duty of the jury to weigh the testimony of railroad witnesses in the same manner as they would other witnesses in other employments under like circumstances. (8) If the evidence leaves the jury in doubt and uncertainty as to whether the engine left the track at the point where the split rail was spiked against the main rail, or at some other point, they must find for the defendant. (9) The only negligence for which the defendant is liable, under the evidence in this case, is the negligence of the section-foreman, if he has been shown to have been negligent. (10) The defendant, under the evidence in this case, is not liable for the negligence of its road-master, James McNamee, if he is shown to have been negligent. (11) Unless the jury believe from the evidence that the derailment of plaintiff's engine was caused by the split rail of the switch leading to the abandoned mine being separated from the main rail, and that the plaintiff did not, by his own negligence contribute to the derailment of his engine, they must find for defendant. (12) If the jury believe that the engine on which plaintiff was riding got off the track at any other point on defendant's track than where the split rail was spiked against the main rail, they must find for defendant. (13) That if the jury believe the evidence in this case, the branch road upon which plaintiff was injured was properly constructed by defendant. (14) That it is the duty of the jury to reconcile conflicting testimony of witnesses, if they can; but, if they can not reconcile the

[Kansas City, Memphis & Birmingham R. R. Co. v. Webb.]

testimony, then they must say, if they can determine, who has told the truth; and if they can not say who has told the truth, then they must find the facts so far as there is conflict, not proven in the case ; and, if such facts are necessary to be proven in order for plaintiff to recover, they must find for defendant.

WALLACE PRATT, and HEWITT, WALKER & PORTER, for appellant, insisted that plaintiff was guilty of contributory negligence in going on a curve at the rate of ten miles an hour, citing *Larson v. Tobin*, 44 N. W. Rep. 1078; *R. R. Co. v. Jones*, 95 U. S. 439; *Hickey v. R. R.* 96 Mass. 433 ; that testimony as to the condition of the track four months before the accident was inadmissible : *Rw'y Co. v. Alexander*, 93 Ala. 133 ; *Penn. Co. v. Marion;* 27 Am. & Eng. R. R. Cas. 132 ; that the negligence of the servants was not chargeable to the defendant: *Smith v. L. & N. R. R.* 75 Ala. 449 ; *M. & B. R. R. v. Holborn*, 84 Ala. 133 ; *L. & N. R. R. v. Davis*, 8 So. Rep. 552 ; *R. R. v. Bradford*, 86 Ala. 574 ; and other authorities.

LANE & WHITE, for appellee, cited in reply, *Wilds v. H. R. R. Co.* 29 N. Y. 315 ; *Cleveland R. R. Co. v. Cin. & I. R. R. Co.* 75 Ind. 542 ; s. c. 3 Am. & Eng. R. R. Cases, 377.

STONE, C. J.—This action was brought under section 2590 of the Code of 1886, and the complaint, as originally filed, contained eight counts. The jury were instructed to find for the defendant on the fifth and seventh counts, and we are therefore relieved of the consideration of any questions that could arise under them. The defendant filed demurrers to the fourth and sixth counts, but inasmuch as the record fails to show any ruling on those demurrers, we can not consider their sufficiency.—3 Brick. Dig. 705 § 82 ; *Ib.* 405; § 13 ; *Ib.* 78, § 7 ; *Powell v. State*, 89 Ala. 172. We do not, however, discover any defects in these counts.— *Ga. Pac. R'way Co. v. Davis*, 92 Ala. 300.

The plaintiff was a locomotive engineer, having charge of a freight-train running on defendant's road. His run took in a spur-track, which connected the main line with a coal-pit, and his train was engaged in hauling coal from the pit to Birmingham. In December, 1889, while drawing a train of cars loaded with coal over the spur-track, the locomotive and some of the cars were derailed, and plaintiff received the injury for which he seeks to recover damages in this action. His contention is that defects in the track

of the railway caused the derailment and the injury. The defense attempted was, that plaintiff was driving his engine at too great speed on a curve, and in that way caused the derailment by his own wrongful act. He was running on no schedule which prescribed his rate of speed.

We hold that each of the six counts, on which, under the charge of the court, the plaintiff could claim a recovery, was based substantially on subdivision 1 of § 2590 of the Code. Each complains of a "defect in the condition of the ways," or track of the railroad, as the cause of the injury. Count No. 1 avers that the "engine was derailed and thrown from said track by the negligent failure of the defendant to have and maintain said track in proper and safe condition;" and that this condition "arose from, and had not been discovered or remedied owing to the negligence of the defendant, or of some person in the employment of defendant, and entrusted by it with the duty of seeing that said track was in a safe and proper condition." This count does not aver in what the defect consisted, nor does it charge that any particular person, agent or employe of the railroad company was guilty of the negligence which caused the way or track to be out of repair. Each of the other counts complains of the defect and want of repair of the track as the cause of the derailment and injury. They differ from the first in specifying, in varying form, and in differing degrees of particularity, the defects in the ways complained of, and in naming the agents through whose negligence those defects had been permitted to remain unremedied.

The defects complained of, and attempted to be established by plaintiff, were:

First, that a switch on the track, which had been placed on the outer line of a curve, had been discontinued but not removed. This switch was placed on the spur-track, for the purpose of connecting another spur-track which formerly forked off from it, but which had been discontinued. The split rail used in switching, it was contended, had been permitted to remain, had been insecurely fastened, had become loose and was out of line with the succeeding rail. That this had continued for a considerable time, and that both the section-master and division-supervisor had negligently permitted it to remain out of repair.

Second, that in constructing the curve, which was on a scale of 14 degrees, the outer rail was not sufficiently raised above the inner, to insure the safety of a moving train passing over it. There was testimony tending to show the truth of each of these charges; and that the attention of

the section-master had been called to the insecurity of the discontinued switch, some weeks before the derailment. Plaintiff's testimony tended to show that the engine left the track at the point of the discontinued switch, and at the misfit of the switch-rail to the one next following. He testified that when his engine left the track he was moving at the rate of not exceeding eight or ten miles an hour.

The defendant's contention was that each of these complaints was untrue in fact, and its testimony tended to prove the truth of this contention. It claimed that the curve was properly constructed, the outer rail sufficiently elevated, the place of the discontinued switch made entirely secure, and that in fact the engine did not leave the track until it had passed the switch some seventy feet. It contended, and made proof in support of the contention, that at time of the run-off the train was moving at the rate of fifteen or twenty miles an hour, that this speed was too high on a curve of fourteen degrees, and that this caused the derailment. We have presented the material issues of fact, as the testimony developed them.

As we have said no issues of law raised on the pleadings, even if ruled on in the Circuit Court, are presented for our consideration. It follows that if the substance of the cause of action set forth in the counts of the complaint be proved, to the extent they are so proved plaintiff was entitled to a verdict. This is the rule even when a complaint which is demurrable is taken issue upon.—*Mudge v. Treat*, 57 Ala. 1; *Irion v. Lewis*, 56 Ala. 190; *Allison v. Little*, 93 Ala. 150, and authorities cited.

The derailment in this case certainly had a cause. It may have been a defect in the railroad track, or it may have resulted from the train being run at too high a rate of speed. Jurors are not presumed to be familiar with the regulations of railroads, or to know what rate of speed will be safe under varying conditions. Manifestly a speed that would be safe on a straight and smooth track would not be necessarily safe on a curve. There must be rules, or a custom, written or unwritten, which governs, or is observed in the running of trains; for no one who has traveled can have failed to discover that no train is ever driven at a uniform, unvarying rate of speed. The condition of the track, at the place being passed over, must of necessity exert an influence in regulating the speed of the train. These regulations, or customs, being not a matter of common knowledge, are a legitimate subject of proof.

11-97.

When plaintiff was on the stand as a witness, he was asked "What was the usual rate of speed for running trains on the spur-track." This was objected to, the objection overruled, and the witness answered, "fifteen miles an hour." Defendant reserved an exception to this ruling, and assigns it as error. It is contended before us that this was an attempt to justify one departure from a safe rule, by proving that such departures were customary, or had been practiced before. The following authorities are relied on in support of this exception.— *Thompson v. Boston & M. B. R. Co.*, 26 N. E. Rep. 1070; *So. Kan. Rwy. Co. v. Robbins*, 23 Pac. Rep. 113; *Larson v. Tobin*, 44 N. W. Rep. 1078; *Hickey v. Boston & L R. Co.*, 14 Allen 429; *Railroad Co. v. Jones*, 95 U. S. 439. We do not understand this question as counsel do. The purpose, as we interpret the language, was, not to prove that the witness had previously run his train on the curve at the rate of fifteen miles an hour. That was not the inquiry. The customary speed of running trains on the spur-track—(it was a mile and a half, or two miles long)—was the information sought to be obtained. That was legitimate on the inquiry of the plaintiff's fault in producing the disaster. There is nothing in this objection.

Plaintiff was allowed to prove, against the objection and exception of defendant, that the defect at the point of the discontinued switch had existed for several weeks before the derailment. There was testimony that it had remained unchanged during all these weeks; and, as we have seen, there was testimony that the attention of the section-master had been called to it. There was no testimony that the plaintiff had ever discovered, or been informed of the alleged imperfection. There is certainly nothing in this exception. Such defects, when they happen, do not at once fasten a liability on the railroad company.—*Seaboard Mfg. Co. v. Woodson*, 10 So. Rep. 87; s. c. 94 Ala. 143; *U. S. Rolling Stock Co. v. Weir*, 11 So. Rep. 436. It is only after they have existed long enough for diligent supervision to discover and remedy them, that liability attaches. If they in fact exist, and are sufficiently patent to be discovered by careful inspection, the longer they are permitted to remain the greater the negligence.

There was testimony that after the switch was discontinued and the split rail spiked down, employees of the railroad, while engaged in taking up and removing the rails and cross-ties from the discontinued spur-track, used the discontinued switch. This they did by drawing the spikes, opening the switch, and when the push car they were using was

Vol. 97.

forced through, then replacing the split rail and spiking it down, driving the spikes back in the same holes from which they had been drawn. This practice some of the witnesses testified was kept up for a month, the operation being repeated three or four times a day. The manifest purpose of this testimony was to show that by the repeated drawing and replacing of the spikes, the fastenings had become less secure. The section-master being on the stand as a witness for the defendant, was asked on cross-examination, "If you were to drive a spike into a cross-tie as many as a hundred times, and pry it out with a crow bar, and put it right back in the same hole again, would it not become very loose?" He answered in the affirmative. The question and answer were severally objected to, the objections overruled, and exceptions reserved. One of the specified objections to this question was that "there was no evidence in the case to support the hypothesis." We think there is nothing in this objection. We can not affirm there was no testimony from which the jury could infer that the spikes had been withdrawn and replaced as many as an hundred times.

In the argument to the jury, counsel said: "The plaintiff admitted that the absent witnesses for whom showings were introduced, would testify as stated in the showings. But the reason he did so, gentlemen of the jury, was that he was forced to do so in order to get a trial. If he had not done so, the case would have been put off till doomsday." Defendant excepted to said remark as improper argument. The attention of the court being called to it, the presiding judge told counsel it was improper argument. This was in the hearing of the jury. Counsel replied, "well I withdraw it."

The remark of counsel was certainly improper. Under our system a party can not obtain a continuance of a cause on account of the absence of a witness, if the opposite party will admit the witness, if present, would testify as is set forth in the showing. When a trial is thus had, the admitted showing, when put in evidence, is entitled to the same consideration as the testimony of the witness would be, if delivered by him personally. Less than this would be great injustice to the suitor who is thus forced to trial in the absence of his witness. There is, however, nothing in the question as reserved. To put the court in error under such circumstances, there must be a request that the jury be instructed to disregard such argument, and a refusal by the court to so instruct them. Less than this, and an exception based on the refusal, does not present a case for reversal.

This principle, as settled in this State, is correctly set forth in *Lunsford v. Dietrich*, 93 Ala. 565, and the authorities therein cited.

Our comments on several counts of the complaint in a former part of this opinion show that the trial court committed no error in refusing the first six charges asked by defendant.

Charges 8, 11 and 12 raise substantially the same question. They confine the inquiry of the jury to the matter of the unsafe condition of the abandoned switch, and ignore the testimony tending to show that the outer rail of the curve was not sufficiently raised above the level of the inner rail. They were properly refused for that reason, if for no other.

Charges 9 and 10 restrict the area of liability to too narrow bounds. There was testimony tending to show negligence in the supervisor as well as in the section-foreman in not discovering and remedying the alleged deranged condition of the switch. For negligence on the part of either of these employees in the matter of their several duties, and injury consequent upon it, the railroad company would be liable.

If charge 13 was intended to refer to the condition of the branch road or spur-track when it was first constructed, it raised an immaterial inquiry, except as to the elevation of the outer rail of the curve; and as to that it was properly refused, for there was testimony the other way. If the reference was to its condition at the time of the accident, then it was clearly improper, for the testimony on that question was in conflict.

Charge No. 14 was properly refused. In the first place, it commits to the jury, without any guide, the duty and task of determining what facts are necessary to be found by them in making up their verdict. In the second place, the proposition it asserts is so complex that very few jurors of average intelligence would comprehend it.

We have reserved consideration of charge No. 7 for the last. That charge asserts "That it is the duty of the jury to weigh the testimony of railroad witnesses in the same manner as they would other witnesses in other employments under like circumstances."

It is certainly true that the jury should weigh the testimony of all witnesses by the same rules, if presented under like circumstances. Interest, friendship, enmity, and prejudice are supposed to exert an influence in shading testimony, but neither of them commands us to believe or dis-

believe what a witness testifies. Like disinterestedness of manner, straightforwardness of statement, freedom from apparent bias, equal readiness to give a full response to an inquiry that damages the party who calls him to testify, as to one which benefits him, they are to be taken into the account in determining what weight the testimony is entitled to. Jurors must be severely just and impartial, and their verdict is what their oaths require, and what the law contemplates, when, and only when it expresses the unbiased conviction of their collective judgment. This is administering justice—the great objective aim of all human, judicial tribunals. This is rendering a true verdict "according to the evidence."

But while charge No. 7 asserts a legal truism, to the extent it directs the jury to be impartial, nevertheless it was rightfully refused. Not to mention any other infirmity, it called on the jurors to institute a mental comparison between weighing the testimony before them with that of other witnesses in other employments under like circumstances." This would have introduced a new subject of investigation, foreign to the issue they were trying, and would be the establishment of a somewhat hazardous precedent.

Affirmed.