(128 So. 389)

**BIRMINGHAM BAPTIST HOSPITAL, Inc., v. BLACKWELL.**

6 Div. 286.

Supreme Court of Alabama.

May 15, 1930.

226

Harris Burns, B. F. Smith, and R. H. Scrivner, all of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

GARDNER, J.

Plaintiff became a patient at the defendant's hospital while undergoing an operation performed by her physician. Immediately following the operation (as to which there was no complaint), she fell into such a state of collapse as to require resort to restorative methods. Plaintiff insists that, in thus treating her for restoration, the nurses at the hospital applied a hot water bottle to the lower part of her abdomen, with the water too warm, and without sufficient protection to her body, so as to produce a burn thereon which proved of a serious character. That plaintiff was badly burned on the abdomen, requiring a subsequent skin-grafting operation, was not a matter of controversy.

The origin of the burn, however, was sharply disputed; defendant insisting that it was the result of the application of hot towels to plaintiff's abdomen by her husband and a lady friend at her home in an effort to relieve the pain on the night before she became a patient at the hospital. The evidence

was in sharp conflict upon this disputed issue of fact.

The burn was a serious one, and, after leaving defendant hospital, plaintiff went to another and by a different physician had the skin-grafting operation performed which proved successful and the wound healed, leaving a scarred place on her abdomen which plaintiff insists is tender and gives occasioned discomfort in certain positions. Plaintiff resumed her former position at the expiration of six months from her first sickness.

The complaint rested for recovery upon averments of simple negligence consisting of the conduct of the nurses in producing the burn as above indicated. The jury returned a verdict in favor of the plaintiff in the sum of $30,000, and, from the judgment following, defendant prosecutes this appeal.

■ A few days after she had returned to her home following the skin-grafting operation, and prior to the healing of the wound, plaintiff, at the suggestion of her counsel, and evidently preparatory to this litigation, had three photographs taken, which were submitted in evidence to the jury and here presented in the record for inspection. Exhibit B is a picture of the wound only, and embraces that portion of the body necessary for its inspection and no more. Plaintiff's testimony tends to show it correctly represents a condition of the wound at that time. The serious nature of the burn was a proper matter for consideration of the jury in determining the amount of damages to be awarded in the event plaintiff should recover. But, more than this, it disclosed the shape of the wound and left room for argument that it bore indications the burn was produced by a hot water bottle as plaintiff contended. The introduction of Exhibit B, therefore, served a legitimate purpose in the suit, and defendant's objection thereto was properly overruled. This photograph gave a well-defined and vivid view of the burn and surrounding part of the abdomen, and its inspection here is quite convincing that it served all legitimate ends and needed not to be supplemented.

■■ But plaintiff was not content with its introduction alone, but offered, over defendant's objection the two other photographs taken at the same time. They were evidently taken at greater range than the other, and disclose the body and face of plaintiff reclining in bed. In one of them (Exhibit C) the burn was left exposed, but its view was not so plain and vivid as that of Exhibit B. The photograph, Exhibit A, however, first to be offered in evidence did not have the burn exposed, but covered with cloths. To the introduction of this photograph defendant interposed the additional ground that the wound was not exposed and it was descriptive of nothing, representing only a "woman lying in bed." As an excuse for Exhibit A, plaintiff

argues it shows she was still having the wound treated, but this was not a controverted issue in the case, and to permit its introduction for such a purpose would but serve to encourage self-serving evidence upon an uncontroverted fact. "It is a cardinal rule in the law of evidence that facts and circumstances which, if proved, are incapable of affording a just, reasonable inference or presumption in relation to a material fact involved in the issue on which the jury are to pass, are irrelevant and inadmissible. Testimony, to be admissible, must relate to and be connected with the transaction it is intended to elucidate, and the connection with it must not be remote, or a forced, strained, or mere conjectural conclusion. It must have a reasonable tendency to prove or disprove a material fact in issue." Karr v. State, 106 Ala. 1, 17 So. 328, 330. As said in the quotation from Starkie found in the Karr Case, supra, irrelevant evidence is "at least useless, and may be mischievous, and may tend to distract the attention of the jury, and frequently to prejudice and mislead them." We think the language most pertinent here. So far as elucidating any material fact in issue, this photograph was "at least useless." Plaintiff is a young woman, and, judging from the photograph before us, possesses an attractive face. There is no occasion here for any detailed description of this photograph of plaintiff as she reclined in bed. The scene is better imagined than described. Suffice it to say, the photograph bears some evidence that the matter of feminine charm was not overlooked, and an appeal to sympathy was not to be ignored. The stage effect was not wanting. As said in the quotation above, this irrelevant evidence "may be mischievous," and that it has a tendency to "distract the attention of the jury" we think is quite clear.

What has been said relates particularly to Exhibit A. It is likewise applicable to Exhibit C, though in the latter the exposed wound offers more reasonable excuse for its introduction, which, however, as to this feature, would be merely cumulative to Exhibit B. Whether the court should be held in error under these circumstances, for its introduction, we need not stop to determine, as we are clear to the view that error was committed in overruling objection to the introduction of Exhibit A above discussed. Whether, standing alone, the prejudicial effect of its introduction would justify a reversal of the cause or be considered as reflected in the amount only of the verdict rendered, it is likewise unnecessary to determine in view of subsequent developments in the trial of cumulative prejudicial character.

We have noted that the issue presented by the pleadings related only to the negligence of the nurses in producing the burn upon plaintiff's abdomen. But counsel for plaintiff, over defendant's objections and the favorable

rulings of the court thereon, persistently insisted, in the examination of witnesses, upon the injection of another issue, to the effect that plaintiff's arm was also negligently injured by hypodermic injections and allowed to become infected.

Mrs. Powell, sister of plaintiff, and the first witness to be examined, was asked on her direct examination concerning the infected condition of the arm, and defendant's objection thereto, upon the ground that it was not embraced within the issues of the complaint, was sustained. On redirect examination, the same witness was again asked if she knew "what brought about or caused that condition of her arm." The objection was sustained, and the ruling thereon immediately followed by the question, "Did you see any nurse in the hospital put any hypodermic needle in the place that was afterwards infected or abscessed?" Objection was again sustained. The next witness was plaintiff's mother, Mrs. Webb, and on her direct examination she also was asked as to the treatment of plaintiff's arm, and in fact answered as to hypodermic, and added: "I suppose she still suffers from that until to-day." Defendant interposed objection upon the ground it was not within the issue, which was sustained, and its motion to exclude the answer likewise sustained, which ruling was immediately followed by another question pertaining to plaintiff's arm, and objection again sustained. This witness was followed by plaintiff's husband, who also on direct examination was asked, "Do you know whether her arm was infected by a hypodermic or otherwise?" Objection interposed. The record discloses: "The court sustained the objection." Dr. Stephens who performed the skin-grafting operation, on redirect examination, was asked three times in regard to the infected condition of plaintiff's arm, and at last the witness replied he did not remember, but stated: "I am sure that there was, but I handle lots of people and I don't know." Counsel for plaintiff then agreed for this reply to be excluded. In connection with the testimony of this witness, we may note in passing another question propounded, illustrative of the method pursued. Dr. Stephens was asked whether or not he had heard of other people getting burned at defendant hospital. The objection was sustained, and the ruling immediately followed by the question, "Have you or have you not?" Objection again sustained, and the witness was then asked whether or not he had heard of a particular person, one Coe, getting burned at what is "now known as the Birmingham Baptist Hospital, Incorporated." Then follows objection and colloquy of counsel concerning the matter, not here necessary to note, the tendency of which was to emphasize the matter of inquiry. Mrs. Brown, plaintiff's nurse, was recalled as a witness to be interrogated solely as to this one matter of the arm, and answered the question affirmatively, although the court had sustained objection thereto. Plaintiff, as a witness in her own behalf, was questioned concerning the arm infection, and in fact stated that the doctor at the other hospital had "looked after her arm the entire time." Objection and motion to exclude were sustained. In rebuttal, plaintiff was recalled, and the first question propounded to her related to the arm. Mrs. Powell, plaintiff's mother, was also recalled in rebuttal, and asked as to the infection of plaintiff's arm, and was there a "disfigurement on it as a result of infection."

Further illustrations of the methods pursued, were questions concerning the absence of plaintiff's husband from the city for a period of seven or eight months, and of his having become seriously ill, as well likewise questions as to whether or not plaintiff's husband and father had made protest to defendant's manager immediately after plaintiff left the hospital, which received comment in argument, and all of which was immaterial to the one and sole issue of fact in the case.

The foregoing brief review should suffice as illustrative of the course followed by counsel for plaintiff throughout the trial as indicative of the "general atmosphere" of the case.

■ It is the generally accepted rule that it will constitute grounds for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get such evidence before the jury to the prejudice of the unsuccessful party. 20 R. C. L. p. 235; 26 R. C. L. p. 1021; 38 Cyc. p. 1478. Among the authorities examined, that of Louisville & N. R. R. Co. v. Payne, 133 Ky. 539, 118 S. W. 352, 353, 19 Ann. Cas. 294, by the Kentucky Court of Appeals, treats the question more fully and clearly, and, as much of what is there said is pertinent to the situation here presented, we quote therefrom the following excerpts:

"The misconduct of counsel complained of in this case was the repeated asking of incompetent questions over the objection of counsel for defendant, and in the face of the rulings of the court that such questions were incompetent. Counsel for plaintiff attempted to establish that the servants in charge of defendant's trains on other occasions had been guilty of acts of negligence similar in character to that for which a recovery was sought in this case. This the court held to be incompetent; but, in spite of his ruling to this effect, counsel for plaintiff persisted in pursuing this line of interrogation almost to the point of exasperation. To each new question bearing upon the same subject counsel for defendant would object, and the objection was promptly sustained, and an exception taken, and the question immediately

asked in another form with the same result. These questions were incompetent, and the line of interrogation attempted to be pursued wholly improper; and, when the trial court had so decided and ruled, counsel for plaintiff should have desisted in his efforts to bring the matter before the jury. Of course a large discretion is allowed an attorney in presenting his case, and so long as it does not appear that he is knowingly and intentionally violating the rules of practice in the introduction of evidence, or otherwise, the fact that he does so will furnish no grounds of complaint to opposing counsel, where the error is corrected by the court; but in a case like that here presented, where counsel persistently pursues a line of interrogation which the court rules to be wrong, and which one reasonably well acquainted with the rules governing the admission of evidence must know to be improper, the conclusion is irresistible that it is done for the purpose of influencing and prejudicing the minds of the jury in arriving at a verdict. No court should countenance such conduct. * * *

"Since no one is infallible, and all are liable at times to be mistaken, and honestly so, in the exercise of the judgment as to what is competent to be proven in support of a given proposition, errors of this character will necessarily occur with more or less frequency, but such are errors of judgment; they are not of the class with which we are dealing. Where the record shows that an attorney persistently and dogmatically pursues a line of interrogation over the objection of opposing counsel and the adverse ruling of the court to the extent here shown, the conclusion is irresistible that such was not due to error of judgment, but in pursuance of a determination to present the matters about which the questions are asked to the jury in spite of court and counsel. Such conduct should neither be tolerated nor excused by the trial court, and no litigant should be permitted to profit by such practice. * * *

"Where an incompetent question is asked, opposing counsel must either permit it to be answered or enter his objection; and, although the trial court refuses to permit the question to be answered, the very fact that the same question in a different form is repeatedly asked, and a vigorous objection interposed to its answer, emphasizes its importance in the minds of the jury, and necessarily prejudices the case, and for this reason, if for no other, where this practice is pursued to the extent indicated in the record in this case, the judgment should be reversed."

We do not recall an authority of this court directly upon the question, but the cases dealing with improper statements of counsel or improper arguments and the like are analogous and in point.

In Alabama G. S. R. R. Co. v. Ensley Transfer Co., 211 Ala. 298, 100 So. 342, it was indicated that, had the matter been material, the offer of the incompetent proof in that case may have called for a reversal of the cause. So far as concerns a practical common sense viewpoint, the case of Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann. Cas. 1916E, 565, is applicable, for, in the trial of this cause, so persistently pursued was plaintiff's line of questioning that answers of the witnesses did in fact creep in, and for practical purposes were before the jury, though in strict legal form excluded.

We are mindful of the differentiating features of the two cases, but the observation made is that merely from a practical standpoint the evidence was before the jury as much in the one case as the other. See, also, Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130; Birmingham Ry., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543; Birmingham Ry., L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037.; Standridge v. Martin, 203 Ala. 486, 84 So. 266; Alabama Fuel & Iron Co. v. Williams, 207 Ala. 99, 91 So. 879; Anderson v. State, 209 Ala. 36, 95 So. 171; Alabama Iron & Fuel Co. v. Benenante, 11 Ala. App. 644, 66 So. 942, cited with approval in Standridge v. Martin, supra; American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507.

These authorities are in furtherance of the expression of this court in Wolffe v. Minnis, 74 Ala. 386, for a fair and impartial administration of justice, the foundation stone upon which the security of our government rests, as found in the oft-quoted language of Justice Stone: "It is one of the highest judicial functions, to see the law impartially administered, and to prevent, as far as possible, all improper, extraneous influences from finding their way into the jury-box." This case was commented upon in American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507, wherein it was pointed out that in the Wolffe Case, supra, the court stated in strong terms the duty of the court, even ex mero motu in some cases, to see to it that the prejudicial effect of the illegal argument be removed.

■ In the instant case it can hardly be conceived that counsel could have been more diligent in persistently asking questions to which the court had time and again sustained objection. The court used no repressive powers and offered no reproof. The mere fact that the questions were so oft repeated and objections interposed seemed to emphasize their importance in the mind of the jury. As we read and understand brief of counsel for appellee, no excuse is offered for such course of procedure here complained of, but insists defendant can take nothing thereby because

of a failure to move for a mistrial or request specific instructions thereon by the court, citing Sharp v. State, 193 Ala. 22, 69 So. 122; Kansas City, M. & B. R. R. Co. v. Webb, 97 Ala. 157, 11 So. 888, and Lunsford v. Dietrich, 93 Ala. 572, 9 So. 308, 30 Am. St. Rep. 79.

The argument overlooks the review and mollification of these cases in the opinion on rehearing in American Ry. Express Co. v. Reid, supra.

The question here discussed is presented as grounds for the motion for new trial, which motion was overruled. There is no reason why conduct of this character should not be governed by the same principles as other conduct of counsel, such as illegal argument and prejudicial and improper remarks made in the jury's presence. It is now the well-established rule that, if improper argument of counsel is of such a character as to fall within that class of argumentative statements which are grossly improper and highly prejudicial, and whose evil influence and effect cannot be eradicated from the minds of the jury by any admonition from the trial judge, then a motion for new trial is due to be granted. Standridge v. Martin, supra; Birmingham Ry., Lt. & P. Co. v. Drennen, supra; F. W. Woolworth v. Sallie Erickson, ante, p. 5, 127 So. 534.

We are inclined to the view, though we leave the question undecided, that, under the circumstances here presented, the duty of further action rested upon the court, and not upon counsel for defendant, and that the rule of cases to the effect "no litigant should be permitted to profit by such practice," should apply. But we leave that aside and undetermined, for the reason that we think through the persistent conduct of counsel for plaintiff the incompetent proof was so presented to the jury as to leave upon their minds an ineradicable impression. It permeated the entire trial without reproof or condemnation, and that it was of a highly prejudicial character is clear, and, indeed, the gross excessiveness of the verdict rendered adds strong indication of its ineradicable nature. We forego further discussion.

The prejudicial effect of the introduction of the photograph first discussed is added to that just considered, and all weighed in the light of the entire record and the general atmosphere of the case. We are of the opinion the ends of justice require a retrial of the cause.

It results that, for the errors indicated, the judgment will be reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.