This is an appeal from a conviction of murder in the first degree and a sentence to imprisonment for life.
The fatal difficulty between defendant and the alleged victim, George J. Coutu, constituted the only meeting ever between the two. It was at the mobile home of Diana DeFloreo, of whom defendant had been enamored and whom Coutu was visiting at the time. About 7:00 P.M. August 27, 1978, according to the testimony of Ms. DeFloreo, she and Coutu were sitting on the patio in front of her mobile home in Triana Trailer Park in Huntsville when defendant drove up in an automobile. He entered the trailer through the back door; Ms. DeFloreo went inside where a violent argument occurred between her and defendant. Defendant went outside through the front door, grabbed Coutu, a much smaller man, and picked him up out of the lawn chair in which he was sitting. Ms. DeFloreo attempted to break up the tussle between defendant and Coutu, and defendant shoved her down. She saw a knife in defendants hand at the time and ran inside the trailer to call the police, but remembering that appellant had torn the phone from the wall while arguing with her a few minutes before, she left through the back door to go to a neighbor's mobile home to call the police, but recalling that she had another phone in her trailer she turned around before reaching her neighbor's trailer. *Page 962 
Upon returning, she met appellant in the back yard, who told her, "Forgive me. I just stabbed your boyfriend." She saw Coutu lying on the ground in the front yard with blood on his shirt. She went in her trailer and called the police, then went to the front yard where she saw defendant with a knife in his hand and holding Coutu. She told defendant to leave the premises, and he did so in his automobile.
There was little, if any, material conflict between the testimony of Ms. DeFloreo and the testimony of defendant. He did not deny stabbing Coutu but testified that he had no recollection of having done so. His testimony as a whole was to the effect that he was tremendously distraught on the occasion and was filled with remorse for what had happened. He acknowledged an affection for Ms. DeFloreo and completely exonerated Coutu of any blameworthy conduct. He recalled his violent conduct in the trailer, his having hit Ms. DeFloreo and torn the phone from the wall, and his unprovoked attack upon Coutu. It would serve no useful purpose to narrate his lengthy testimony, a part of which was as follows:
 "And I don't know, I think at that point I had the knife in my hand, because I had — it's true I had lifted up my hand or something and gave it to — tried to give it to Dee [Ms. DeFloreo] and I was really — kneeling there next to George put me out of it, it was quite an experience.
 "Q If you did in fact stab him or if you had stabbed him did you know that you had done it?
 "A No, sir. If I knew I had done it I would admit to it. This is something you've got to live, to really go through and to understand how it feels.
 "Q What did you say after she came up? What did you do after that?
 "A Well, I think at that point, I don't know whether I had assumed I had stabbed the man or not, but I did make that indication to her and tried to hand her the knife. And she put her hand on it and — but didn't give too much pressure about taking it away from me. And I just held on to it, you know. The blade, I think the blade was laying against my wrist. And after she let go she looked down at George and noticed the blood on his shirt. And she took off after a second. . . .
 "I never seen Dee after that point. I can't say how long this was, but after a little more time I just got up and I just sort of walked to my car and got in the car and just headed out of the trailer court the same way I had come in.
". . .
 "Q How do you become, what do you mean you have a problem? How do you become when you lose your temper?
 "A I think in my case I let — have a tendency to let pressure build up over a long period of time, and sometimes I just really don't know how to cope with it. But I think lots of times, you might say blow off steam, I do a lot of talking. But there is no — I have never hurt anybody anytime from any kind of a confrontation or anything. I would rather back off from a fight than get into it with someone."
The evidence shows almost conclusively that Coutu's death resulted from a wound inflicted by the knife to which Ms. DeFloreo referred in her testimony and which defendant admitted he had in his hand.
Defendant turned himself in to appropriate authorities the next morning, after he had reported what he had done to a friend and they had checked on the physical condition of Coutu and, according to defendant, he had spent a night wandering and contemplating suicide.
Defendant had pleaded not guilty and not guilty by reason of insanity, but he offered no evidence as to his plea of insanity, and the trial court did not submit such issue to the jury. Appellant does not contend that a jury issue as to insanity was presented by the evidence.
One of the two issues now presented by appellant is as to the action of the court, or counsel for the State, relative to the knife involved. It appears that counsel for the State had the particular knife identified *Page 963 
as State's Exhibit 1 and was in the process of identifying it as one that had been found by one of the officers in defendant's automobile, that defendant contended that seizure of it resulted from an illegal search and requested a hearing on the matter out of the presence of the jury, which was granted. During the voir dire, the court expressed some doubt as to the validity of the search, and thereupon counsel for the State said, "State does not insist," and the hearing before the jury was then resumed without any further effort by the State to offer the knife in evidence or to show that a knife was found in defendant's automobile. Appellant states:
 "After the Appellant objected to any further testimony in the trial concerning the knife, on the ground that it had been recovered as the result of an illegal search (ROA p. 84) the District Attorney was permitted to question the defense witness, Eddie Grantland (ROA p. 90) as to the knife, over objection by appellant."
The cited page (90) of the record and page 91 thereof show the following:
 "Q Eddie, let me show you State's Exhibit 1 and ask you if you can identify that, please.
"A Yes, sir.
"Q What is that, please, sir?
 "A That's a Cutco knife that belongs to a set, belongs to me. Belongs to a set of knives that I have hanging on my wall in the trailer.
 "MR. PERRY: At this time I would like to make an objection as to the use of that. I thought that matter had been settled.
"THE COURT: It hasn't been settled, Mr. Perry.
"MR. PERRY: Okay, sir.
 "Q Is that the knife that came from your set out of your trailer?
"A Yes, sir."
The record shows no further objection by defendant as to the knife. No ruling adverse to defendant was made; the ruling invoked by defendant was obviously not insisted upon. No error was committed by the court as to the matter.
A major insistence of appellant is that ". . . the cumulative effect of the Prosecutor's questioning and remarks during cross-examination of Appellant and closing arguments were so prejudicial to the Appellant as to warrant the granting of a new trial in view of the fact that the Prosecutor persisted in such questioning and remarks in spite of Appellant's objections thereto being sustained by the Court."
The part of the cross-examination of appellant to which the reference is made is as follows:
 "Q Now, Mr. Trent, these people are here to decide this case, would you look at them and you tell us, you tell them how do they know in the future that pressure won't build up and you won't be able to cope with it and you can't control your temper.
"MR. PERRY: We object to that.
"Q And you will panic and kill somebody else.
"THE COURT: Sustained.
 "Q Can you tell us, can you give anybody any assurance that the pressure won't build up?
"MR. PERRY: Make the same objection.
 "Q You won't be able to cope with it and you can't control your temper and you won't kill somebody else?
"THE COURT: Sustained.
 "Q But you don't know if you will ever stab anybody again or kill anybody again.
"MR. PERRY: The same objection, Your Honor.
"THE COURT: Sustained.
 "Q And you can't tell the Court nor to the jury that you won't kill somebody again, can you?
"MR. PERRY: We object, Your Honor.
"THE COURT: Sustained.
 "Q You are telling us here today that you don't remember, but you went over and told Johnny that you stabbed a man? Didn't you hear him testify from the stand that you came over there and told him that you stabbed a man? *Page 964 
 "A I told Your Honor that I got into a fight over at Miss DeFloreo's trailer and it was possible that someone was hurt over there and that's as far as I told him when I left George was still alive.
 "Q Everything else is crystal clear to you except when you slammed that knife into that man's chest, isn't it?
 "A I don't know where the knife came into play. I honestly don't. If I did I would tell the people here.
 "Q But you can't tell these people that you will never kill again?
 "MR. PERRY: We object to that at this point and ask the Court to declare a mistrial.
"THE COURT: Sustain the objection and overrule that.
 "MR. SIMPSON: I don't guess we have any further question."
We agree with appellant that counsel's persistence in asking defendant on cross-examination questions substantially the same as those to which the court had sustained objections of the defendant was improper and that if it was so grossly improper and highly prejudicial that its evil influence could not be eradicated from the minds of the jury, defendant was entitled to the mistrial for which he moved. Application in this State of that principle is first found in Birmingham Baptist Hospitalv. Blackwell, 221 Ala. 225, 128 So. 389, 392 (1930) and quickly followed by Pointer v. State, 24 Ala. App. 23, 129 So. 787
(1930). In Birmingham Baptist Hospital, the questions asked pertained to treatment by the defendant of plaintiff's arm, particularly hypodermic injections, which was foreign to the issue between the parties, namely, whether defendant's employees were negligent in applying a hot water bottle to the lower part of plaintiff's abdomen. Appellant frankly concedes in his brief that the principle established in BirminghamBaptist Hospital v. Blackwell and followed in the other cases cited by appellant, is not applicable unless the conduct complained of was of "such prejudicial character that the probable effect is ineradicable by the sustaining of an objection and proper instruction to the jury by the Court." The questions repeated on cross-examination of defendant are not to be likened to the questions complained of in Birmingham BaptistHospital v. Blackwell and the other cases cited by appellant, which pertained to matters of fact unrelated to the issues in the cases. Even though the questions asked in the instant case may have been much more objectionable than the questions asked in the other cases, they did not tend to seek to bring other matters of fact into the case. They constituted argumentative questions, to some extent a badgering of the witness, and they should not have been asked, and a continuous repetition thereof is not to be condoned, but we have no doubt that any prejudicial effect of the questions would have been readily eradicated by stern instructions of the trial judge. Such being true, the questions are removed from the rationale ofBirmingham Baptist Hospital v. Blackwell, supra. It is not for us to say why the trial court did not ex mero motu admonish the jury on the subject. Nor is it for us to say why defendant did not request the trial court to do so. It may well be that all concerned were of the view that the repeated questions accomplished no good for the State and resulted in no harm to defendant. We are convinced that a mistrial would not have been appropriate under the circumstances and that the trial court was not in error in denying the defendant's motion therefor.
We now set forth that part of the record that seems to be the basis for appellant's contention that argument of counsel to the jury was so improper and prejudicial that the judgment should be reversed and the cause remanded for a new trial:
 "MR. PERRY: Your Honor, we object to Counsel in closing arguments referring to he might try to kill somebody in the future. I think it has been dealt with about four times in the trial.
 "THE COURT: I didn't understand what was said. If it was said I sustain it. "(Whereupon, Mr. Simpson continued to address the jury in final closing arguments on behalf of the State; at which time, the following occurred:) *Page 965 
 "MR. PERRY: We object to that remark. He is still insinuating that some time in the future if this client is released or found guilty of a lesser offense other than first degree murder that he will commit a similar crime to this in the future.
 "MR. SIMPSON: I haven't said such a thing, if it please the Court.
 "THE COURT: I don't sustain it on the basis of your remarks, but I will sustain it.
 "(Whereupon, Mr. Simpson continued to address the Jury in final closing arguments on behalf of the State; at which time, the following occurred:)
 "MR. PERRY: Your Honor, we object to that statement, same basis as before. Jury owes no explanation to the District Attorney for its verdict.
"THE COURT: Well, I sustain it. I will sustain it.
 "MR. PERRY: Ask the Court to instruct the jury to disregard that statement.
"THE COURT: All right.
"MR. PERRY: And declare a mistrial at this time.
"THE COURT: Overruled."
It should be readily observed from the portion of the record quoted above that it is impossible for us to tell just what defendant's counsel argued that constituted the basis for the objection and the motion for a mistrial. We should say, however, that if, as indicated by defendant's objection, counsel for the State was arguing that if defendant was not convicted of murder in the first degree, he "might try to kill somebody in the future," we would not condemn it as improper argument. Argumentative questions to a witness are inappropriate, but the use of argumentative language in addressing a jury is the right and duty of an attorney. Argument that a defendant charged with murder in the first degree should be punished by imprisonment for life is not to be analogized to argument by the State that, "a man like this, if he was to get off with life imprisonment, he would be out and around . . . or kill some convict there in the penitentiary," which furnished a basis for a reversal in Eaton v. State,278 Ala. 224, 177 So.2d 444, and which is relied upon by appellant. In Eaton, the court dealt with a charge of murder in the first degree at a time when punishment to be fixed by the jury was death or imprisonment for life. The prosecuting attorney was appealing for the death penalty; he was arguing against punishment by life imprisonment. The argument there was anti-pathetic to the argument in the instant case. Under the law as it was then, whereby the jury determined whether punishment should be fixed at death or life imprisonment, the soundness of what was held cannot be seriously questioned. As was stated at 278 Ala. 227, 177 So.2d 447:
 "The only inference to be drawn from the solicitor's argument in the present case that, `a man like this, if he was to get off with life imprisonment, he would be out and around' — would be that the accused would either escape the penitentiary, or be paroled. Neither event was for the consideration of the jury."
In defendant's motion for a new trial there was one ground that was predicated upon alleged improper argument of counsel for the State which ground does not aid us any more than does the quotation from the record above, as to what counsel for the State actually stated in the argument complained of. In this circumstance and by reason of our view that appellant's criticism of the argument allegedly made is not justified, we find no error in the court's overruling the motion for a new trial.
 "The objections and exceptions reserved to excerpts from the argument of the solicitor are without merit. Counsel in the presentation of their cases must be allowed a wide range in the exhortations to the jury to discharge the duties resting upon them, in such manner as, not only to punish crime, but to protect the public from like offenses, and as an example to deter others from committing like offenses." Witt v. State, 27 Ala. App. 409, 174 So. 794, cert. denied, 234 Ala. 391, 174 So. 795 (1937). *Page 966 
We are favorably impressed by the apparently sincere remorse of defendant and his recognition of the seriousness of the crime he committed, but we have little doubt that the jury, also probably favorably impressed by defendant's attitude, acted with sincerity in returning their verdict on the issue that was clearly within their province to decide. We find no error in the record. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.