JONES, Justice
(dissenting):
I respectfully dissent.
We granted the Petition for Writ of Certiorari to review the opinion of the Court of Criminal Appeals on one issue: Whether the appellate court erred in affirming the trial Court’s denial of Defendant’s motion for a mistrial following the District Attorney’s repeated questioning of the Defendant in spite of the Court’s sustaining of Defendant’s objections to such questions. (For a complete statement of the facts of this case, see Trent v. State, 380 So.2d 960 (Ala.Cr.App.1979). I would hold that the Court of Criminal Appeals did so err; therefore, I would reverse and remand.
In order to put this issue into perspective, I quote from the pertinent portion of the record the entire line of questions, the responses, the objections and motions, and the Court’s rulings:
“Q And I believe in answer to questions on Cross Examination you said that you panicked.
“A Reference to what?
“Q At the trailer.
“A I would say so. I would say I lost control, yes, sir.
“Q And back when you painted Johnny’s door red you panicked?
“A Yes, sir.
“Q You threatened his life?
“A I don’t remember that part of it.
“Q But you panicked at that time?
“A John is a truthful person. If he said I did, I probably did.
“Q And you panicked at that time and you panicked on August 27th, is that correct?
“A I think maybe can use a different word other than panic. I lost control. There is a difference.
“Q Lost control?
*967 “A Difference between the two words.
“Q You say that the pressure builds up and you can’t cope with it and you lost control?
“A It has on occasion.
“Q Has on some occasions?
“A Yes, sir.
“Q And you are telling the Jury that you can’t control your temper?
“A I believe I can. I think like I said, I am basically a talker, you can’t find anything to prove that I have done anything to anybody.
“Q Now, Mr. Trent, these people are here to decide this case, would you look at them and you tell us, you tell them how do they know in the future that pressure won’t build up and you won’t be able to cope with it and you can’t control your temper.
“MR. PERRY: We object to that.
“Q And you will panic and kill somebody else.
“THE COURT: Sustained.
“Q Can you tell us, can you give anybody any assurance that the pressure won’t build up?
“MR. PERRY: Make the same objection.
“Q You won’t be able to cope with it and you can’t control your temper and you won’t kill somebody else?
“THE COURT: Sustained.
“Q But you don’t know if you will ever stab anybody again or kill anybody again.
“MR. PERRY: Make the same objection, Your Honor.
“THE COURT: Sustained.
“Q And you can’t tell the Court nor to the Jury that you won’t kill somebody again, can you?
“MR. PERRY: We object, Your Honor.
“THE COURT: Sustained.
“Q You are telling us here that you don’t remember, but you went over and told Johnny that you stabbed a man? Didn’t you hear him testify from the stand that you came over there and told him that you stabbed a man?
“A I told John that I had got into a fight over at Miss DeFloreo’s trailer and it was possible that someone was hurt over there and that’s as far as I told him. When I left George was still alive.
“Q Everything else is crystal clear to you except when you slammed that knife into that man’s chest, isn’t it?
“A I don’t know where the knife came into play. I honestly don’t. If I did I would tell the people here.
“Q But you can’t tell these people that you will never kill again?
“MR. PERRY: We object to that at this point and ask the Court to declare a mistrial.
“THE COURT: Sustain the objection and overrule that.
“MR. SIMPSON: I don’t guess we have any further questions.”
I next quote the following language from the opinion of the Court of Criminal Appeals:
“The questions repeated on cross-examination of defendant are not to be likened to the questions complained of in Birmingham Baptist Hospital v. Blackwell [221 Ala. 225, 128 So. 389 (1930)] and the other cases cited by appellant, which pertained to matters of fact unrelated to the issues in the cases. Even though the questions asked in the instant case may have been much more objectionable than the questions asked in the other cases, they did not tend to seek to bring other matters of fact into the case. They constituted argumentative questions, to some extent a badgering of the witness, and they should not have been asked, and a continuous repetition thereof is not to be condoned, but we have no doubt that any prejudicial effect of the questions would have been readily eradicated by stern instructions of the trial judge.”
I find myself in substantial agreement with the appellate court’s analysis, on a comparative basis, of the instant case and Birmingham Baptist Hospital. In Birmingham Baptist Hospital, the questions complained of attempted to inject unrelated *968 factual matters into the issues of the case. Here, the questions complained of were objectionable on different grounds. The issue, then, is whether, because of this difference, this case is “removed from the rationale of Birmingham Baptist Hospital, supra”; that is, whether “the conduct complained of was of ‘such prejudicial character that the probable effect is ineradicable by the sustaining of an objection and proper instruction to the jury by the court.’ ”
If the only distinction between Birmingham Baptist Hospital and the instant case consisted of the substantive or qualitative difference in the questions complained of, I would agree with the appellate court that “the [instant] questions are removed from the rationale of Birmingham Baptist Hospital v. Blackwell.” Ordinarily, of course, questions which seek to inject unrelated and prejudicial matters are not comparable to questions which are merely argumentative. Where the issue is one of ineradicable prejudice, the effect of a question merely argumentative in nature can be cured by sustaining of an objection and proper instructions to the jury by the court; and, in such case, a motion for mistrial is due to be overruled.
Here, however, the questions are not merely argumentative; or, perhaps, more accurately stated, although the challenged questions are objectionable as being argumentative, the full context in which the alleged error below occurred consists of two additional aspects, or added dimensions, invoking the “ineradicable prejudice” rule: 1) the cumulative effect of the questions in creating a prejudicial atmosphere; and 2) the failure of the trial court to retain control of the proceedings.
Because of their overlapping and interrelating nature, and because of their combined effect, these two aspects of the problem can hardly be discussed separately. Nevertheless, for analytical purposes, there is value in approaching each of them apart from the other. I begin by reviewing the substance of the question complained of. The original question asks the Defendant to “. . . tell [the jury] how do they know in the future that pressure won’t build up and you won’t be able to cope with it and you can’t control your temper [Here, defense counsel objected] and you will panic and kill somebody else. [Here, the Court sustained the objection.]” The substance of this two-part question was repeated five times.[1] Clearly, these were not questions to which the District Attorney sought an answer. Indeed, his purpose was better served by being able to repeat the question, over and again, without its being answered. In addition to its argumentative character, the question (whether answered or not) was calculated to engender bias and prejudice in the minds of the jury.
The “cumulative effect” rule is ingrained into the jurisprudence of our State, and is well stated in Blue v. State, 246 Ala. 73, 19 So.2d 11 (1944):
“In determining the question before the court, we do not think that each of the above statements must be analyzed separately to see whether or not, if standing alone, it would create an ineradicable bias or prejudice. We think, on the contrary, that these various statements should be considered together to determine whether or not, in their cumulative effect, they created a prejudicial atmosphere.”
To the above statement of the rule should be added, of course, as Blue assumes, that the challenged statements must be inadmissible as evidence or excludable as argument, as the case may be. I agree with the Court of Criminal Appeals that “the questions asked in the instant case may have been much more objectionable than the questions asked in [Birmingham Baptist Hospital and other cases cited by Petitioner] and they should not have been asked.”
It is the context in which the trial Court ruled on defense counsel’s objection, then, that invokes the “cumulative effect” rule; and I think the probability of prejudice, created by the District Attorney’s asking *969 the same question six times, required the trial Court to grant Defendant’s motion for a mistrial.
I believe ;his conclusion is buttressed by the further fact that each repetition of the question came after an adverse ruling by the trial Court. To be sure, defense counsel interposed his original objection at the conclusion of the first part of the two-part question. In view of the trial Court’s subsequent ruling, sustaining the objection, it is obvious that, had proper court room decorum been observed, this would have ended the matter and the latter part of the question (“And you will panic and kill somebody else.”) would never have been asked. In point of fact, however, it was asked five additional times in face of an adverse ruling each time.
This brings me to a discussion of the second aspect of the problem: The trial Judge’s exercise of control of his court room, thus assuring the orderly administration of justice in proceedings before him. Here, in an apparent effort to allow counsel wide latitude within which to discharge their respective roles as advocates, the trial Court relinquished its judicial role.
Hence, the District Attorney was allowed to play his hand beyond the bounds of propriety not merely in spite of the trial Court’s adverse rulings, but, to an enhanced degree, because of such rulings. Defendant, on the other hand, suffered unwarranted prejudice in spite of the trial Court’s favorable rulings; and this because of the Court’s failure to enforce its rulings. I believe the trial Court’s lack of control of the instant proceedings contributed to the cumulative effect of the impropriety of the challenged repetitive questions in creating a prejudicial atmosphere which could have been cured only by granting the Defendant’s motion for mistrial.
The State, in support of its contention for affirmance, asserts that, because the trial Court ruled favorably to Defendant upon the Defendant’s objections, it was incumbent upon him to ask the Court for proper jury instructions (to disregard the question) as a prerequisite to his motion for mistrial. I agree that mistrials áre not favored; and, in the interest of judicial time, mistrials should be granted only in extreme situations after all other reasonable means to cure the error have been exhausted. The record before us, however, shows unusual restraint on behalf of defense counsel. He had every right to expect his adversary to respect and honor the trial Court’s ruling. Likewise, he had the right to expect the trial Court to enforce its rulings. While it is incumbent upon trial counsel to invoke a ruling to preserve reviewable error, the rules of procedure impose no affirmative action upon counsel to require the court to enforce its rulings in order for defendant to invoke the “cumulative effect” rule.
Here, the defense counsel was content to continue his objections and accept the Court’s favorable rulings thereon, without more, through the fifth repetition of the same question. Finally, it appeared that the District Attorney was honoring the Court’s persistent adverse rulings and for two questions he changed the subject to nonobjectionable matters. Then came the question for the sixth time, “But you can’t tell these people that you will never kill again?” And only then did defense counsel combine with his objection a motion for a mistrial. Again, the trial Court sustained the objection but overruled the motion.
The cumulative effect of the District Attorney’s improper conduct as a ground for Defendant’s motion for mistrial, under the circumstances of this case, is not dependent upon the Defendant’s earlier request for proper jury instructions to disregard the District Attorney’s repetitive questions. I think it is clear that by the time the District Attorney’s conduct, in its cumulative effect, created a prejudicial atmosphere, such bias or prejudice had become so ineradicable as to require the declaring of a mistrial to insure the Defendant a fair trial.

. If the second portion of the two-part question is counted as a separate question, the District Attorney asked the objectionable question a total of seven times.-