The appellant, Richard Acton St. John, was convicted of shooting a firearm into an occupied vehicle, in violation of § 13A-11-61, Code of Alabama 1975. He received a split sentence of 10 years, with 6 months' imprisonment in the county jail and the balance to be served on probation.
The evidence presented by the State tended to show that on May 17, 1986, Timothy Sims picked up his uncle's 1967 Chevrolet Chevelle automobile around 1:30 that *Page 523 
afternoon to do some repair work on it. To determine what work was necessary, he had to take the car out for a drive. Sims's cousin, Byron Ford, went along on this drive. During this drive, they passed by appellant's house, proceeded 150 yards down the road to a race track, turned around, and drove the car back to Sims's shop for repairs. Among the deficiencies noticed was that the car lacked a muffler, and thus, was rather noisy.
Sims finished the repairs around 5:00 o'clock that afternoon, and decided to take the car back out for a test drive. He took his cousin and two friends along with him. Sims again drove past appellant's house on the road to the race track. On his way past appellant's house, all of the vehicle's occupants noticed appellant standing out in his yard with a rifle, but thought nothing of it. Sims drove down to the race track, turned around, and headed back past appellant's house. He had started to accelerate and change gears when he saw a puff of smoke from appellant's gun. He saw another puff, then the car windshield cracked. Realizing that the appellant was shooting at them, the occupants all ducked down into the car and Sims drove away as quickly as possible. Upon arriving back at his home, Sims reported what had happened to his parents, who in turn called the Sheriff's Department and reported the incident.
Mike Boyd, an investigator with the Chambers County Sheriff's Department, went to appellant's house on the night of the shooting. When Boyd arrived, appellant was standing in the front yard wearing a .357 Magnum revolver in a shoulder holster. He told appellant to put his hands up, whereupon appellant stated, "You're not going to have any trouble out of me." Boyd walked over and removed the gun from appellant's holster. Appellant then stated, "That's not what I shot at them with," and "The 30.06 is in the house." Both of these statements were uttered spontaneously, as Boyd had not asked appellant any questions at all.
By this time another law enforcement official arrived, and placed appellant under arrest. Appellant's wife then took Investigator Boyd into the house and showed him where the 30.06 rifle was located. Boyd picked up the rifle and one live round of ammunition lying next to it, took it to the Sheriff's Department, and turned it over to Deputy Howard Carlton.
Appellant testified that in the past, automobiles had gone by his house at high rates of speed. He admitted that he aimed his gun and fired at the car, but stated that he never meant to hit anyone. Appellant also admitted calling the Sheriff's Department and complaining about speeding vehicles going by his house, but denied that he called the Sheriff's Department with threats to kill the person driving in front of his house.
In rebuttal, the State called Chief Deputy Greg Lovelace, who testified that he had talked to appellant numerous times over the past few months regarding his complaints about speeding cars driving past his house. Lovelace further testified that approximately two weeks before the shooting, appellant called and complained about a race car running up and down the road in front of his house. Appellant told Lovelace, "If someone doesn't get up here within the next few minutes, I'm just going to blow the son-of-a-bitch out of the road."
 I
Appellant first contends that the trial court erred in denying his motion for a mistrial on the grounds that the prejudicial effect of testimony concerning a phone conversation could not be erased from the minds of the jurors.
 "A motion for a mistrial implies a miscarriage of justice and should only be granted where it is apparent that justice cannot be afforded. Young v. State, 416 So.2d 1109
(Ala.Cr.App. 1982). A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted. Woods v. State, 367 So.2d 982 (Ala. 1978); Duncan v. City of Birmingham, 384 So.2d 1232
(Ala.Cr.App. 1980); Wadsworth *Page 524 v. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied, Wadsworth v. Alabama, [466] U.S. [930], 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984).
 "The granting of a mistrial is an extreme measure, and a mistrial should be denied where the prejudicial qualities of the comment can be eradicated by the action of the trial court. Young, supra, Dickey v. State, 390 So.2d 1177 (Ala.Cr.App.), cert. denied, 390 So.2d 1178 (Ala. 1980)."
Dixon v. State, 476 So.2d 1236, 1240 (Ala.Cr.App. 1985).
The record reveals that Chambers County Jailer Bill Smith testified that someone identifying himself as the appellant called the sheriff's office and threatened to kill the people riding up and down the road in front of his house. When the trial court determined that Smith could not testify with certainty that the caller was indeed the appellant, the court sustained defense counsel's objection and promptly instructed the jurors to totally disregard the testimony concerning the telephone call.
We, therefore, hold that any prejudice suffered by the appellant as a result of the jailer's testimony was erased by the curative instructions of the trial court.
 "There is a prima facie presumption against error where the trial court immediately charges the jury to disregard the improper remarks or answers. Wadsworth, supra; Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied, 405 So.2d 731 (Ala. 1981); Chambers v. State, 382 So.2d 632 (Ala. 1980). Therefore, the trial court did not err in refusing the appellant's motion for mistrial."
Moreover, the later admission of similar evidence establishing prior threats by appellant renders any error with regard to the jailer's testimony harmless.
 II
Appellant next contends that the trial court erred in allowing the jury to consider the testimony of Chief Deputy Greg Lovelace.
While on the stand, Lovelace testified that appellant had called the sheriff's office approximately two weeks before the shooting and said: "If someone doesn't get up here within the next few minutes, I'm just going to blow the son-of-a-bitch out of the road." At the end of that statement, defense counsel objected, but failed to state any grounds for his objection.
Appellant's contention that the trial court erred by admitting Lovelace's testimony concerning the telephone conversation because the caller had not been identified is without merit.
As previously mentioned, an attempt was made by the State during its case-in-chief to introduce testimony concerning threats made by appellant during phone calls to the sheriff's office. This effort failed because the witness could not positively identify the caller as the appellant. The State then rested its case. As part of the defense, the appellant took the stand to testify in his own behalf. He readily admitted making numerous phone calls to the Sheriff's Department over the past few months to complain about cars speeding up and down the road in front of his house. Appellant's admission thus "opened the door" for the State to inquire further into the content of the telephone calls.
 "[W]hen one party brings out part of a transaction or conversation, the other party may inquire further into the matter or bring out the whole subject for further examination. Logan v. State, 291 Ala. 497, 282 So.2d 898 (1983); Hocutt v. State, 344 So.2d 194
(Ala.Crim.App. 1977). This proposition of law, also known as the 'rule of completeness,' 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein."
Ex parte Tucker [v. State], 474 So.2d 134, 135 (Ala. 1985). Moreover, appellant's admission that he had called the sheriff's *Page 525 
office numerous times to complain about speeding cars in front of his house, coupled with Deputy Lovelace's testimony that he had received numerous complaints over the past few months regarding speeding cars on the road in front of appellant's house from the same person and that the person identified himself as the appellant, supplied sufficient evidence to identify the speaker as the appellant. See 7 Wigmore,Evidence § 2155 (Chadbourn rev. 1978); Statev. Richards, 294 N.C. 474, 242 S.E.2d 844 (1978) (circumstantial evidence was sufficient to identify the caller, including evidence that same person had made calls over a six-month period and had identified himself as the accused). Therefore, the trial court was correct in allowing the voice identification and the subsequent telephone conversation to be admitted into evidence.
 III
Appellant further contends that it was error for the trial court to admit into evidence certain spontaneous statements he made to Investigator Boyd before Boyd had the opportunity to advise him of his Miranda rights.
Certain voluntary oral statements are exceptions to theMiranda requirements. Included among these are spontaneous statements. Smith v. State, 489 So.2d 638,640 (Ala.Cr.App. 1986).
 "A spontaneous statement, blurted out by the accused and volunteered to a police officer prior to any questioning, is admissible against him even though he was not given the Miranda
warnings. Hammons v. State, 371 So.2d 986
(Ala.Cr.App. 1979); Espy v. State, 365 So.2d 356 (Ala.Cr.App. 1978). An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule. Hammons, supra."
Ervin v. State, 399 So.2d 894, 897 (Ala.Cr.App.),cert. denied, 399 So.2d 899 (Ala. 1981).
In the instant case, it was undisputed that when Boyd went to appellant's residence on the night of the shooting, he saw appellant in the front yard wearing a .357 Magnum revolver in a shoulder holster. Boyd told appellant to put up his hands, whereupon appellant stated, "You're not going to have any trouble out of me." Boyd walked over and removed the gun from the holster. At that point appellant said, "That's not what I shot at them with." He then stated, "The 30.06 is in the house."
Thus, the record clearly establishes that appellant made these statements to Boyd before Boyd had time to advise him of his rights. Moreover, Boyd's testimony establishes that at the time he approached appellant to remove his weapon, he had no intention of asking him any questions. We, therefore, find that appellant's unsolicited statements were properly admitted.
 IV
Appellant contends that the trial court erred in admitting State's exhibits 4, 6, and 8. Said exhibits consisted of a photograph depicting the vehicle that had been fired into, and a rifle, and certain ammunition, both taken from appellant's residence.
 "Before evidence may be considered by the trier of fact, it must satisfy certain minimum requirements of admissibility.
 "The evidence must be material. Materiality of evidence has been defined as that quality of evidence which tends to influence the factfinder because of its logical connection or pertinency of the disputed issue. General Telephone Co. of Alabama v. Cornish, 291 Ala. 293, 280 So.2d 541 (Ala. 1973); [Mersereau] Mesereau v. Whitesburg Center, Inc., 47 Ala. App. 146, 251 So.2d 765 (1971).
 "The evidence must be relevant. Evidence which is relevant has some tendency to make the existence of any fact or inference that is of consequence to the determination of the action more or less probable than it would be without the evidence. Raines v. Williams, 397 So.2d 86 (Ala. 1981); Taylor v. Mason, 390 So.2d 1046 (Ala. 1980); Cherry v. Hill, 283 Ala. 74, 214 So.2d 427 (1968); Loftin's Rental All, Inc. v. Universal Petroleum Services, Inc., 344 So.2d 781 (Ala.Civ.App. 1977); Evans v. Newsome, 56 Ala. App. 651, 324 So.2d 791 (1975); Water *Page 526 Supply Board of the City of Arab v. Williams, 53 Ala. App. 560, 302 So.2d 534
(1974); State Farm Mutual Auto. Ins. Co. v. Griffin, 51 Ala. App. 426, 286 So.2d 302
(1973).
 "What is relevant is a matter ordinarily within the discretion of the trial court. Unless such discretion is abused, it will not be considered error on appeal. Costarides v. Miller, 374 So.2d 1335 (Ala. 1979); Ott v. Fox, 362 So.2d 836 (Ala. 1978); Donaldson v. Buck, 333 So.2d 786 (Ala. 1976); State Farm Mutual Auto. Ins. Co. v. Humphres, 293 Ala. 413, 304 So.2d 573 (1974); Alabama Music Co. v. Nelson, 282 Ala. 517, 213 So.2d 250
(1968)."
Dawkins v. State, 455 So.2d 220, 221-22
(Ala.Cr.App. 1984).
The test for determining the admissibility of a photograph is whether it is a true and accurate representation of the subject which it purports to represent, as it existed at the time pertinent to the inquiry. Mitchell v. State,450 So.2d 181, 184 (Ala.Cr.App. 1984).
When asked if he could identify State's exhibit 4, a photograph, Timothy Sims initially stated that the photograph "looks like the right rear corner of the top of the windshield." However, he went on to testify that the photograph fairly and accurately depicted the condition of that portion of his uncle's car when he arrived home. Thus, the admission of State's exhibit 4 was not error.
Turning to the rifle and ammunition, State's exhibits 6 and 8 respectively, it is clear that the trial court properly admitted these as well.
Investigator Mike Boyd of the Chambers County Sheriff's Department testified that appellant told him the 30.06 rifle that he shot at the automobile was in his house. In fact, appellant's wife told Boyd to come in and get the weapon and even showed him where it was located. Boyd further testified that live ammunition was lying next to the rifle and that he also picked up the live rounds. After procuring the rifle and ammunition, Boyd turned them over to Deputy Howard Carlton.
Carlton stated that he received a 30.06 rifle and live ammunition from Boyd. Upon receiving the items, Carlton placed evidence tags on them. He testified that these items were the ones he received from Boyd and that they were in substantially the same condition as when he received them. Thus, an unbroken chain of custody was established.
From the testimony it is readily apparent that these items were both material and relevant. Therefore, the trial court acted within its discretion in admitting State's exhibits 6 and 8 into evidence.
 V
Appellant next contends that the trial court erred in refusing to exclude certain State's witnesses from the courtroom during his trial. Specifically, he contends that the four occupants of the vehicle into which he shot should not have been exempt from the rule of sequestration. We disagree.
As we have previously held, "[e]xcluding witnesses from the courtroom is entirely discretionary with the trial court." Loper v. State,469 So.2d 707, 712 (Ala.Cr.App. 1985). Moreover, it is apparent that these four individuals were the victims of appellant's offense, and, therefore, had a right to be in the courtroom at all times under the provisions of the Alabama Crime Victims' Court Attendance Act, § 15-14-50 through §15-14-57, Code of Alabama 1975. Thus, no error has been shown.
 VI
Appellant also contends that he received ineffective assistance of counsel during his trial.
 "To establish ineffective assistance of counsel, the accused must show that his attorney's performance was so deficient as to fall below an objective standard of reasonableness and, further, that this deficiency actually prejudiced him and deprived him of a fair trial.
 " 'Judicial scrutiny of counsel's performance must be highly deferential. *Page 527 
It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Issac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S. [91], at 101, 76 S.Ct. [158], at 164 [100 L.Ed. 83]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."
Stringfellow v. State, 485 So.2d 1238, 1242
(Ala.Cr.App. 1986).
The appellant has failed to demonstrate, nor do we find, that he was prejudiced by his counsel's performance at trial. Trial counsel's alleged errors did not affect the outcome of the trial. The State's case was based on the testimony of the four victims, whose testimony implicating appellant was unshakeable. Thus, the appellant has failed to meet his burden of proving to this court that the outcome of his trial would have been different absent any asserted errors committed by his trial counsel.
 " 'An accused is not entitled to error-free counsel.' Phelps v. State, 439 So.2d 727, 735 (Ala.Cr.App. 1983); Mallory v. State, 437 So.2d 595 (Ala.Cr.App. 1983). Upon examining the record, we are convinced that the trial attorney in the present case performed adequately and that the appellant was not denied the effective assistance of counsel."
Stringfellow, supra, at 1243.
 VII
Appellant's final contention is that the trial court erred in denying his motion for judgment of acquittal or, in the alternative, a new trial. Both alternatives were premised upon the verdict being contrary to the evidence and the law applicable to the case.
As we have previously stated, however, where the evidence presented raises questions of fact for the jury which, if believed, would be sufficient to sustain a conviction, this court has no right to disturb the verdict of the jury.Dixon v. State, 476 So.2d 1236, 1240 (Ala.Cr.App. 1985). Moreover, this court will not disturb a verdict of conviction on the grounds of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence is so decidedly against the verdict as to clearly convince us that it was wrong and unjust. Wilbourn v. State, 457 So.2d 1001, 1004
(Ala.Cr.App. 1984); Sales v. State, 435 So.2d 242, 246
(Ala.Cr.App. 1983); Williams v. State, 420 So.2d 819,821 (Ala.Cr.App. 1982). This court is not so convinced.
Appellant was indicted on the charge that he shot or discharged a firearm, gun, or other weapon into an occupied automobile, in violation of § 13A-11-61, Code of Alabama 1975 (1986 Supp.). Four people were in the automobile at the time appellant fired the shots. Each of the four testified that appellant aimed his rifle at the automobile in which they were riding and fired shots at them.
We find that there was clearly sufficient evidence, presented by the State, from which the jury could, by fair inference, conclude that the appellant was guilty of the crime for which he was convicted. *Page 528 
For the reasons stated above, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.