PATTERSON, Judge
Appellant, Samuel Robert Brooks, was indicted in a two-count indictment for theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975, and possession of a forged instrument in the second degree, in violation of § 13A-9-6. A jury found him guilty of theft and acquitted him of possession of a forged instrument. He was sentenced to ten years’ imprisonment on the theft conviction. He appeals, raising two issues.
I.
Appellant first contends that there was a fatal variance between the indictment charging the theft of $16,810.77 in currency and proof of a theft of a check in that amount. He relies on the holdings in the cases of Ex parte Airhart, 477 So.2d 979 (Ala.1985); Shubert v. State, 488 So.2d 44 (Ala.Cr.App.1986); and Carr v. State, 104 Ala. 43, 16 So. 155 (1894).
Omitting its formal parts, the pertinent portion of the theft count of the indictment reads as follows:
“The GRAND JURY of said County charge, that, before the finding of this indictment
“SAMUEL ROBERT BROOKS ... did knowingly obtain or exert unauthorized control over lawful currency of the United States of America, the property of William and Hazel Day, of the approximate aggregate value of sixteen thousand eight hundred ten and 77/100 dollars ($16,810.77), with the intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama, ..
Appellant, a practicing attorney, undertook to assist Hazel and William Day, husband and wife, in collecting their casualty claim against an insurance company for damages to their property. He wrote a letter of inquiry to the insurance company and, in due course, received a check from the company in full satisfaction of the claim, made payable to Hazel and William Day, in the amount of $16,810.77. Appellant endorsed the check by signing Mr. and Mrs. Day’s names thereon, and deposited the check in his attorney’s trust account. Subsequently, he withdrew the $16,810.77 from his attorney’s trust account, and used it to pay his personal obligations. The Days never recovered any of the funds.
The state contends that appellant did not object to the alleged variance in the lower court and thus failed to preserve the issue for review. We do not agree. The issue was sufficiently and timely raised below by appellant’s motion for a judgment of acquittal on the ground that the state had failed to prove a prima facie case. Evidence of the theft of currency was required to establish a prima facie case, and the motion was sufficient to call the alleged variance to the attention''of the trial court. Ex parte Maxwell, 439 So.2d 715 (Ala.1983).
The cases relied upon by appellant correctly state the Alabama rule and, indeed, hold as he contends, that an allegation of theft of currency and proof of theft of a check is a fatal variance. However, we believe that these eases, as well as the other reported cases adhering to the rule, are distinguishable from the case at bar. If appellant had cashed the Days’ check and immediately pocketed the money or used it for his personal obligations, we would agree that there would be a fatal variance under the authorities cited; however, this was not the case under the facts before us.
Here, the check was not cashed by appellant and the proceeds immediately converted to his personal use; rather, it was deposited in his trust account. The purposes of the trust account are to protect the client’s funds and to prevent the commingling of the funds of the client with those of the attorney. Code of Professional Responsibility of the Alabama State Bar, DR 9-101 (1974). The commingling of the client trust funds with the funds of. the attorney is forbidden. DR 9-102. It was from this trust account that appellant later withdrew the money and used it for his personal obligations. When he did so, he took money or currency belonging to the Days. It was not until this act that appel *603 lant exerted unauthorized control over the property of the Days, and this unauthorized control was exerted over currency, not the check. The jury, in acquitting appellant of the offense of possession of a forged instrument, apparently believed that he had authority to endorse the check for the Days or that he thought that he had the authority, and therefore did not forge the Days’ signatures on the instrument. The deposit of the check in the trust account raises a reasonable inference that appellant had not formulated the intent to convert the funds to his personal use at the time of the deposit. There simply was never a theft of the check, as appellate counsel argues, but there was a theft of money belonging to the Days from the trust account.
“The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled.”
House v. State, 380 So.2d 940, 942-43 (Ala.1979). In the case sub judice, we find that the indictment alleged the theft of currency and the evidence established theft of currency. There was no variance. Appellant contends that there was no theft of the money because he had a right to withdraw the entire amount from the trust account and apply 40 percent to the payment of his alleged attorney’s fee for handling the insurance claim and the balance to the payment of attorney’s fees for legal matters he had handled in the past. He claimed an attorney’s lien on the entire sum. The testimony of a fee arrangement between the appellant and the Days was in sharp conflict. Appellant contended that it was understood that he would be paid a fee, although the amount had not been agreed upon. The Days contended that appellant, because of his friendship and association with them, handled their legal problems without charge and had never mentioned legal fees to them. Whether there was a fee arrangement as contended by appellant or whether his contention was a fabrication, as urged by the Days, was a question for the jury bearing on appellant’s intent in taking the money, and the jury chose not to believe him, which was its right.
II.
Appellant’s second contention is stated as follows: “Due process, the right to a fair trial and the interest of justice require that Brooks be granted a new trial.” Several separate issues are raised under this contention. He argues that his due process rights were violated when the state elicited testimony concerning two disciplinary proceedings initiated with the Mobile Bar Association against appellant, and when the state cross-examined appellant as to his silence in those proceedings when confronted with allegations of unethical and possible illegal conduct.
One of the disciplinary proceedings involved a complaint by Grady D. Hill, a former client of appellant, who claimed that appellant had undertaken to represent him in an insurance claim and that, upon settlement, appellant failed to remit the proceeds of the settlement to him. Mr. Hill testified at the trial of the instant case to this effect. This evidence of a similar collateral act was admissible, under the circumstances of this case, as an exception to the general exclusionary rule, as it tended to prove plan, design, or scheme and intent. Nicks v. State, 521 So.2d 1018 (Ala.Cr.App.1987); C. Gamble, McElroy’s Alabama Evidence § 69.01(5), (6) (3d ed. 1977).
The second disciplinary proceeding involved a grievance filed with the bar association by the Days. It related to the alleged theft that is the subject of this prosecution.
If any error occurred by the admission of testimony concerning the bar association activities, it was error without injury because the admissible testimony of Mr. Hill and the Days rendered the testimony concerning the bar activities cumulative. A.R.A.P. 45. In addition, appellant initially questioned witnesses concerning the disciplinary hearings and, thus, opened the door for further questioning about the hearings by the prosecutor.
*604 It appears that appellant availed himself of the privileges of the Fifth Amendment when confronted with certain accusations during the disciplinary proceedings. The prosecutor, by cross-examination, attempted to bring out the silence of appellant during the disciplinary proceedings in an effort to show that his present defense that he took the money as payment for legal fees was not advanced in the prior proceedings, but was urged for the first time in the instant case. The prosecutor made brief reference to this in his closing remarks to the jury. The record reveals that the rulings on the objections made at the time of the questioned cross-examination and summation were favorable to appellant. No curative instructions were sought, and the motions for mistrial made by appellant at the time were, in our opinion, properly denied.
We think that cross-examination of appellant as to his silence during the disciplinary proceedings, under circumstances in which he would have naturally asserted the defense now relied upon, would have been proper in this case. Likewise, comment in summation to the jury concerning the silence would have been proper if based upon evidence admitted at trial. The United States Supreme Court addressed this issue in Fletcher v. Weir, 455 U.S. 603, 606, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490 (1982), stating:
“In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant’s own testimony.”
Id., at 607, 102 S.Ct. at 1312. See also Bradley v. State, 494 So.2d 750 (Ala.Cr.App.), aff’d, 494 So.2d 772 (Ala.1986). We have carefully examined the arguments of appellant under this contention and find no merit.
For the above reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.