562 So.2d 604 (1990)
Ex parte Samuel Robert BROOKS.
(Re Samuel Robert Brooks v. State of Alabama.)
88-1258.
Supreme Court of Alabama.
February 16, 1990.
*605 Paul D. Brown, Mobile, for petitioner.
Don Siegelman, Atty. Gen., and Robert E. Lusk, Jr., Asst. Atty. Gen., for respondent.
HORNSBY, Chief Justice.
Samuel Robert Brooks was indicted in a two-count indictment for theft of property in the first degree and possession of a forged instrument in the second degree. A jury found him guilty of theft and acquitted him of possession of a forged instrument. He was sentenced to ten years' imprisonment on the theft conviction.
Brooks was a practicing attorney. He undertook to assist Hazel and William Day in collecting their claim against an insurance company for damage to their property. He eventually received full satisfaction ($16,810.77) of the claim by check, which was made payable to the Days. Brooks endorsed the check by signing the Days' names and deposited the check into his attorney's trust account. He subsequently withdrew the same amount from the trust account to pay personal obligations. The Days never recovered any of the funds.

Issues
1) Whether the trial court erred in failing to recognize the due process violation that occurred when the prosecutor argued in closing that Brooks had (in a previous unconnected matter) exercised his right to remain silent and had requested counsel before answering questions.
2) Whether there was a fatal variance between the indictment charging theft of lawful currency and the evidence at trial that a "check," not "currency," was taken.
Because our analysis with respect to the two issues above effectively resolves this appeal, other issues raised by the petitioner are not discussed in this opinion.

Tacit Admissions Rule

I. Improper Argument/Cross-Examination of Counsel
Brooks argues that the mention of his silence by the prosecutor in his closing argument was error.
The prosecutor's remarks during closing argument were:
"And Mr. Knizley talks about how candid and how open Mr. Brooks was. Mr. Brooks was asked about the matter involving Mr. Hill. And his response was, `I'm not talking. I take the Fifth.'"
Improper argument of counsel is not grounds for a new trial when the defendant's objections are sustained and no curative instruction is sought. See Alabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala.1977). An exception would be where counsel's remarks were so grossly improper and highly prejudicial as to be beyond corrective action by the trial court. Id. The remarks in this case fall within this category.
Regardless, the Court of Criminal Appeals stated in its opinion that "the prosecutor, *606 by cross-examination, attempted to bring out the silence of Appellant during the disciplinary proceedings in an effort to show that his present defense [was] that he took the money as payment for legal fees [and that this] was not advanced in the prior proceedings." 562 So.2d 601. This effort by the prosecutor was improper to show a tacit admission on behalf of Brooks, under this Court's decision in Ex parte Marek, [1989] 556 So.2d 375 (Ala.1989).[1] In Marek, we abolished the tacit admission rule, "which previously allowed the introduction of evidence of an accused's silence when confronted with an accusation." Id. at 382. We specifically held that this abolition applied to pre-arrest situations as well as to post-arrest situations.
A review of the record of this trial reveals the following colloquy when the defendant was being cross-examined by the prosecutor:
"Q: Prior to today, sir, you were a party to a grievance proceeding filed by Mr. Hill, were you not?
"A: Yes, I was.
"Q: And on that occasion, on any one of the three occasions when testimony was given did you, sir, lie under oath?
"Mr. Knizley: Your Honor, object. Irrelevant, Immaterial.
"Mr. Galanos: Goes to the credibility of the witness.
"Mr. Knizley: No it does not, Your Honor. The fact that he may have lied under oath on some other occasion has nothing to do with his credibility in this case. That is an improper way to impeach a witness.
"The Court: Sustained.
"Q: Did you on a prior occasionthis would have been on the 17th of November, 1985 in response to the question `Where is the money, the $5,000 now?' Did you not respond, `It's in my trust account?'
"Mr. Knizley: Objection. Irrelevant and immaterial. It's hearsay and we have notI have never seen this transcript. It was not produced in pre-trial.
"Mr. Galanos: He had as much access to it as I did. He could have ordered it from the court reporter.
"A: No, Your Honor.
"Mr. Knizley: Judge, I didn't have any access to it. I never knew it was going to be brought in. It had nothing to do with this case and I don't know anything about this transcript and he hasn't made it available to me.
"The Court: I sustain the objection.
"....
"Q: You heard Mr. Bedsole tell this jury yesterday that you told him that the money was in a trust account; did you not?
"A: I believe that was his testimony, yes, sir.
"Q: Do you disagree with that?
"Mr. Knizley: Objection. It's irrelevant and immaterial.
"The Court: Sustained.
"Q: You also heard Mr. Bedsole say that when he told you words to the effect `would it surprise you to know that your trust account reflected only a balance of $253' that your response was, `well, I guess it's time for me to go get a lawyer.' Did you hear Mr. Bedsole make that statement?
"....
"A: Your Honor, I would like to assert a privilege. These are matters that are currently under investigation on a formal grievance by the State Bar. And as such they are privileged documents. And it is my privilege and I do not consent to waiving that privilege and that is under the Disciplinary Rules.
"Mr. Galanos: If the Court please, we're asking him not what happened but about what Billy Bedsole testified to under oath in this court yesterday.
"Mr. Knizley: Your Honor, I would also ask my client since we're talking about Mr. Hill that we [assert] the Fifth Amendment privilege again. That we [assert] our constitutional right. If they want to talk about Mr. Hill and his money, obviously he could *607 easily be prosecuted for that, as we can see, so we [assert], we would ask my client under oath to [assert] his Fifth Amendment privileges again.
"A: I would [assert] those privileges also in addition to the privilege under the Disciplinary Rules.
"The Court: All right. Now as to that, Mr. Galanos, I don't know that the privilege has been waived.
"Q: Now, with reference to the matter involving the Days, you did not tell the Bar Commission the same story that you told this jury yesterday afternoon and today, did you?
"Mr. Knizley: Your Honor, we object. It's a privilege underIt's privileged what he said to the Bar Commission. He was under indictment at that time or potential indictment and he didn't have to tell the Bar Commissioners anything. He thought he was telling, if he did tell `em anything, under a privilege.
"....
"The Court: That's what I say. I'm dealing with the Fifth Amendment privilege. This Court is not bound by the privilege or the Bar Association protection of the confidentiality; but with respect to the Fifth Amendment, the Defendant is entitled to assert it.
"Q: Without getting into the substance of what you may or may not have said to the Bar Association, my question is this: Did you tell the Board of Bar Commissioners, Mr. Brooks, the same story about the theft of the Brooksabout the theft of the Day money that you related to this jury yesterday afternoon and today?
"Mr. Knizley: Your Honor, commenting on the privilege and irrelevant and immaterial.
"Mr. Galanos: It calls for a simple yes or no answer, if the Court please.
"The Court: Overruled.
"A: Mr. Galanos, I asserted my Fifth Amendment in that hearing.
"Q: You did not tell them that it was for payment of legal services, did you?
"A: To the best of my knowledge
"Mr. Knizley: Your Honor, commenting on the fact that he took the Fifth Amendment. He cannot go further once the client has said he's [asserted] it and say as to why and when and how and that sort of thing.
And, Judge, once again we would move for a mistrial in this case for the prosecutor delving into this area which he knows is highly improper.
"The Court: Well I want to get away from the incidents in which he has invoked the Fifth Amendment privilege. Motion for mistrial is denied."
The State, on cross-examination, attempted to introduce evidence that Brooks had expressed a desire to consult an attorney before answering any further questions at a prior disciplinary proceeding before the Alabama State Bar. The State proceeded to cross-examine Brooks on this point, even after he had asserted his Fifth Amendment privilege. Finally, the State proceeded to argue his silence to the jury as an indication of guilt. This was an improper use of the now-abolished tacit admission rule, as well as a violation of Brooks's due process rights. The cumulative effect of the prosecutor's questions, coupled with his improper closing argument, was so prejudicial to Brooks that a new trial is required, particularly in light of the prosecutor's continued questions to Brooks even after objections to these questions were sustained by the trial judge. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 228, 128 So. 389 (1930); see, e.g., Trent v. State, 380 So.2d 960, 963 (Ala.Crim.App.1979).
We stated the following in Birmingham Baptist Hospital, supra, 221 Ala. at 229, 128 So. at 392:
"`Where an incompetent question is asked, opposing counsel must either permit it to be answered or enter his objection; and, although the trial court refuses to permit the question to be answered, the very fact that the same question in a different form is repeatedly asked, and a vigorous objection interposed to its answer, emphasizes its importance in the minds of the jury, and necessarily prejudices the case, and for this reason, if for *608 no other, where this practice is pursued to the extent indicated in the record in this case, the judgment should be reversed.'"
Quoting Louisville & N.R.R. v. Payne, 133 Ky. 539, 118 S.W. 352, 353 (1909). For this reason, we reverse.

II. Fatal Variance
Because our reversal will likely cause the defendant to be tried again on the original indictment, we consider it appropriate to address the defendant's argument that the indictment is defective.
The indictment reads as follows:
"The GRAND JURY of said County charge, that, before the finding of this indictment
SAMUEL ROBERT BROOKS
whose name is to the Grand Jury otherwise unknown than as stated,
"did knowingly obtain or exert unauthorized control over lawful currency of the United States of America, the property of William and Hazel Day, of the approximate aggregate value of sixteen thousand eight hundred ten and 77/100 dollars ($16,810.77), with the intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama.
"COUNT TWO

"The GRAND JURY of said County charge, that, before the finding of this indictment SAMUEL ROBERT BROOKS whose name is to the Grand Jury otherwise unknown than as stated, did with intent to defraud, possess or utter a forged instrument as follows: a check, drawn on the Independence Bank of Chicago, dated September 16, 1986, payable to William and Hazel Day, for the amount of sixteen thousand eight hundred ten and 77/100 dollars ($16,810.77), endorsed with the names of William Day and Hazel Day, which falsely purports to be the act of William Day and Hazel Day, and having knowledge that said instrument was forged, in violation of § 13A-9-6 of the Code of Alabama."
Ex parte Airhart, 477 So.2d 979 (Ala.1985), clearly states the rule that when the charge involves "currency" and the proof shows that a "check" was involved, there is a fatal variance between the indictment and the proof. The Court of Criminal Appeals distinguishes this case from Ex parte Airhart, supra, acknowledging that a check was deposited into Brooks's account, but holding that it had been converted into "currency" when Brooks later withdrew it from his trust account. According to the facts as stated in the Court of Criminal Appeals' opinion, it was not until this point, when the amount represented by the check had become currency in his account, that Brooks formed the requisite intent to commit the theft, thus exerting unauthorized control over the Days' property. If Brooks had cashed the Days' settlement check and used it for his personal obligations, he would have converted a check, and there would have been a variance between the indictment and the proof. In this instance, however, because Brooks deposited the check, so that it was converted into currency, and then converted the currency, there was no variance.
Based on the foregoing, we reverse the judgment and remand the cause to the Court of Criminal Appeals for proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
I am persuaded that the opinion authored by Judge Patterson and concurred in by all Judges on the Court of Criminal Appeals is correct. I would quash the writ, or affirm; therefore, I must dissent. I would point out, however, that I agree with the majority's holding on the fatal variance issue.
MADDOX and STEAGALL, JJ., concur.
NOTES
[1] We note that Marek had not been decided at the time of the trial court's ruling in this case.