The appellant, Rex Allen Nail, was charged under two indictments. The first indictment charged the appellant with robbery in the third degree, in violation of § 13A-8-43, Code of Alabama 1975. Count one of the second indictment charged the appellant with rape in the first degree, in violation of §13A-6-61, Code of Alabama 1975, and count two of the second indictment charged him with sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama 1975. The jury found the appellant not guilty of robbery in the third degree, not guilty of rape in the first degree, and guilty of attempted sodomy. For the conviction of attempted sodomy, the appellant was sentenced to 12 years' imprisonment, was ordered to pay $1,000 fine, and was ordered to pay $50 to the Victims' Compensation Fund.
The facts adduced at trial tended to establish the following. On May 21, 1991, the appellant met K.P. at a local gasoline service station and food mart in Dothan, Alabama. K.P. testified that she was in her car waiting for a friend at the gasoline station. She further testified that the appellant was sitting in his truck. When the appellant noticed K.P., he went over to K.P.'s vehicle and started a conversation. After a short time, K.P. went to the women's restroom. As she came out of the restroom, the appellant was standing outside. K.P. testified that the appellant pushed her back into the restroom against the wall and that he had a soft drink can and a pack of cigarettes in his hand. K.P. said that she believed he was using the soft drink can as a method to smoke crack cocaine. She said that the appellant tried to make her smoke crack cocaine, but that she refused.
K.P. testified that the appellant cursed at her and that he told her that he knew what she wanted. She said that the appellant touched her breast and between her legs and that when she tried to push him away, he slapped her. She stated that the appellant had her undress and she was on the bathroom *Page 774 
floor. K.P. stated that the appellant proceeded to have sexual intercourse with her. K.P. testified that at one point, the appellant tried to have K.P. perform oral sex on him by placing his penis on her mouth, but that she refused.
K.P. testified that when the appellant was through, he went through her purse, that he took some money, and that he handed her a slip of paper and made her write her telephone number on the paper. K.P. testified that the appellant had seen her address on her driver's license and that he knew where she worked, so she wrote down her telephone number. K.P. said that the appellant told her not to tell anyone or that he would kill her. K.P. left the bathroom after the appellant left. K.P. did not seek medical treatment. The evidence tends to establish that the police were notified of the incident two days after it occurred. During cross-examination, defense counsel impeached K.P.'s testimony through the use of inconsistent statements, and, through a series of questions, defense counsel effectively raised the defense of consent.
Over the objection of defense counsel, the trial court permitted the State, during its case-in-chief, to present the testimony of S.H. regarding a collateral sexual offense by the appellant. S.H. testified that in February 1991, she met the appellant at a bar in Panama City, Florida. The appellant told her that he was looking for a job but that he did not have a place to stay. S.H. told him that he could sleep on a couch at her house. The appellant came over to her house for a while, but left, stating that he was going to get something to eat. S.H. testified that the appellant did not return before she went to bed so she locked the door. S.H. further testified that at approximately 3:00 the next morning she was awakened by the appellant, who was sticking his tongue in her ear. S.H. testified that she was leading the appellant to the door, when he put his hands around her neck and forced her to the floor. S.H. testified that the appellant then raped her. S.H. further testified that after the attack, the appellant told her, "That's what you really wanted." S.H. went to a neighbor's home and called the police, but the appellant was not found.
Donald Mathis testified for the defense during direct examination that K.P. was at his apartment at approximately 4:00 p.m. on the evening of the incident and that he and K.P. smoked marijuana at that time. He further testified that she left the apartment, but that she returned between 8:00 p.m. and 9:00 p.m.. According to Mathis, K.P. did not tell him that she had been raped, robbed, or sodomized and he did not see any bruises or abrasions.
The appellant testified that he was at the gasoline station on the night of the incident and that he did smoke crack cocaine with K.P. However, he testified that K.P. started the conversation and had the cocaine, which, he said, she offered to share with the appellant. The appellant stated that they smoked the cocaine in K.P.'s car and then began kissing. He testified that K.P. asked him to go with her into the bathroom. The appellant testified that they smoked more crack in the bathroom and that he laid his shirt on the bathroom floor for K.P. to lay on. He testified that they then had consensual sexual intercourse.
The appellant further testified that K.P. asked him for $50 so that she could buy some more crack, but that he refused to give her any money. K.P. became angry, wrote her telephone number on a piece of paper and gave it to him and told him that he must call her the next day so he could arrange to bring her the money.
 I
The appellant first argues that the trial court erred when it allowed the prosecution to cross-examine the appellant and Donald Mathis about specific acts of misconduct.
The appellant argues that the trial court erroneously permitted the prosecution to question Mathis in regard to where the marijuana that he and K.P. smoked was obtained.
During direct examination by defense counsel, Mathis testified that he and K.P. had smoked marijuana on the day of the incident. We hold that the trial court did not *Page 775 
err in allowing the prosecution to question Mathis as to where he obtained the marijuana because the defense counsel "opened the door" for further questioning. See Brooks v. State,562 So.2d 601, 603 (Ala.Crim.App. 1989), rev'd on other grounds,562 So.2d 604 (Ala. 1990); St. John v. State, 523 So.2d 521
(Ala.Crim.App. 1987).
In Ex parte Tucker, 474 So.2d 134 (Ala. 1985), the Alabama Supreme Court, although holding that the defendant had not opened the door for, nonetheless allowed the admission of evidence of another crime, holding that the rule against admitting such evidence is overcome when one party testifies as to a part of a transaction, because the other party should then be permitted to bring out evidence of the entire transaction to explain or rebut adverse inferences from the evidence introduced by the first party. This exception is applicable to Mathis's testimony that he had smoked marijuana with the victim. The prosecution was then properly permitted to rebut the inference that K.P. had obtained the marijuana.
The appellant argues that the trial court erroneously permitted the prosecution to cross-examine him in regard to his sexual activity the night after the incident with a witness who testified on behalf of the State. The appellant contends that questioning him in regard to sexual intercourse with another individual constituted impeachment through the use of a specific act of misconduct. However, during cross-examination, the appellant stated that he may have confused the sexual intercourse that he had with the victim with the sexual intercourse he had with another woman the next night. The appellant volunteered that he had had sexual intercourse with this other woman.
After the appellant volunteered this information, the prosecution merely asked questions concerning the appellant's meeting this other woman and spending the night with her. The prosecutor questioned the appellant about the woman only after the appellant testified that he had had sex with her. The prosecution never implied that the appellant had raped this woman or that he had committed any other criminal offense. Again, the appellant opened the door for the questioning by the prosecution with regard to this matter. See Brooks v. State,562 So.2d 601, 603 (Ala.Crim.App. 1989), rev'd on othergrounds, Ex parte Brooks, 562 So.2d 604 (Ala. 1990); St. Johnv. State, 523 So.2d 521 (Ala.Crim.App. 1987).
 II
The appellant next asserts that the trial court erred in allowing a police investigator, Edward Ingram, to read the details of the victim's statement, which formed the basis for her complaint, into evidence because, he argues, the statement is not admissible to prove the victim's allegations. The appellant's argument is without merit.
During cross-examination of the victim, defense counsel questioned her as to whether she had used the word "rape" in making her statement to Ingram. In fact, defense counsel had questioned the victim with regard to several aspects of her statement to the investigator. He questioned her as to whether she had told the investigator that the appellant took money from her, whether she had told him that the appellant had spoken to her harshly, and whether she had told him that the appellant had removed her pants. Defense counsel used the details of the victim's recorded statement during his cross-examination in an effort to impeach her credibility.
The appellant correctly states the general principle that the details and particulars of a prosecutrix's complaint are ordinarily inadmissible. Harris v. State, 394 So.2d 96
(Ala.Crim.App. 1981); Biggs v. State, 331 So.2d 763
(Ala.Crim.App. 1976), cert. denied, 331 So.2d 765 (Ala. 1976). However, in Cady v. State, 455 So.2d 101, 105 (Ala.Crim.App. 1984), this Court held that a police officer's testimony as to the details of the victim's complaint in a rape case were properly admitted after defense counsel intensively questioned the victim during cross-examination in an effort to impeach her credibility. Cady is directly on point. In this case, the victim was thoroughly cross-examined with regard to the details she had given to the investigator, and, the investigator's testimony as to the details, therefore, falls within an *Page 776 
exception to the general rule of inadmissibility.
 III
The appellant also argues that the trial court erred to reversal in allowing the State to present the testimony of S.H. as to the appellant's collateral sexual misconduct.
Under the general exclusionary rule, evidence of a collateral sexual offense is inadmissible its admission is sought solely to prove the guilt of the accused. Anonymous v. State,507 So.2d 972, 973 (Ala. 1987). However, there are a number of exceptions to the general exclusionary rule that permit the introduction of collateral offense evidence. In Jones v. State,580 So.2d 97 (Ala.Crim.App. 1991), this Court analyzed the question of the admissibility of evidence of a collateral sexual offense in a rape case in which consent was raised as a defense. In that case, this Court held that if there is a logical connection between the forcible rape of two women so as to evidence a common plan or scheme on the part of the defendant, the evidence is admissible in response to the defense of consent. Id. at 101; see also Atkisson v. State, [Ms. CR-91-1825, May 28, 1993] 1993 WL 179526 (Ala.Crim.App. 1993) (Judge Bowen, concurring). In this case, the attack on S.H. was similar to the attack on K.P.. Both women expressed that they were comfortable with the appellant at first. The appellant then became aggressive, forced each of the victims to the floor and had sexual intercourse with them. The appellant made similar remarks to both victims — "That was what you wanted," or "I know what you want" — during or after the attacks. Moreover, both attacks occurred within a few months of each other. Therefore, the collateral sexual offense evidence in this case was admissible to show a lack of consent on the K.P.'s part because the offenses are logically connected and evidence a common plan or scheme on the part of the appellant.
Although the collateral sexual offense evidence was admissible, we must determine whether the probative value of that evidence outweighed its potential prejudicial effect to the appellant. The Alabama Supreme Court, in Bowden v. State,538 So.2d 1226, 1237-38 (Ala. 1988), set forth the following factors to be analyzed on a case-by-case basis in determining whether evidence of a collateral sexual offense outweighs any potential prejudicial effect in a prosecution for a sex crime: (1) the offense charged; (2) the circumstances surrounding the offense; (3) the other collateral evidence offered at trial; and (4) the other purpose for which the collateral evidence is offered.
Applying the Bowden factors to this case, we hold that the probative value of the evidence of the collateral offense outweighed any potential prejudice to the appellant. Here, the appellant was charged with rape, sodomy, and robbery. The appellant, if formally charged in the collateral sexual offense, could have been charged with rape. As stated, the circumstances surrounding the collateral sexual offense and the now charged offense are very similar and occurred within a short time.
Furthermore, there was very little other collateral evidence offered at the trial of this case by the prosecution. There was no eye-witness to the acts. In fact, the victim was subjected to rigorous cross-examination, which elicited inconsistent testimony. Therefore, K.P.'s testimony was suspect, presenting a need by the State to introduce testimony or evidence corroborating the testimony of the victim. Atkisson; Registerv. State, [Ms. CR-92-179, May 28, 1993] 1993 WL 179839 (Ala.Crim.App. 1993); J.D.S. v. State, 587 So.2d 1249
(Ala.Crim.App. 1991). The testimony of S.H. to corroborated the testimony of K.P. Last, the collateral offense evidence was admissible for a purpose other than to prove the guilt of the appellant. The evidence was properly admissible to establish a lack of consent on the part of the victim.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., dissents with opinion in which TAYLOR, J., joins. *Page 777