The State appeals the trial court's order dismissing an indictment against Larry Saxton on double jeopardy grounds. In June 1996, Saxton, without authorization, allegedly cashed Thomas Smith's Social Security check and kept the money. On December 12, 1996, Saxton was tried for second-degree theft of property, §13A-8-4, Ala. Code 1975. The indictment charged that Saxton "did knowingly obtain or exert unauthorized control over, to-wit: Lawful United States Currency, a better description of which is otherwise unknown to the Grand Jury, the property of Thomas Smith of the value of approximately $321.00, with the intent to deprive the owner of said property." (C.7.) After the jury was empaneled, but before it was sworn, the State moved to amend the indictment to delete the words "Lawful United States currency" and substitute "check or money." Saxton did not consent to the amendment. The State then informed the trial court that there was a material variance between the charges in the indictment and the proof the State expected to show at trial. Therefore, the State requested that the trial court, pursuant to § 15-8-91, Ala. Code 1975, either remand the case to the grand jury or dismiss the indictment and order that Saxton be re-indicted. Saxton replied that he was ready for trial and that any delay caused by the State's failure to amend the indictment earlier would be an abuse of prosecutorial discretion. The trial court denied the State's motion and proceeded with the trial.
At the close of the State's case-in-chief, Saxton moved for a judgment of acquittal "on the grounds that the State has a fatal variance between its pleading and proof and that the charge is stealing currency and the proof is stealing a check or taking a check." (R.92.) After hearing counsel's arguments, the trial court granted Saxton's motion. The trial court explained to the jury why it granted Saxton's motion, stating:
"In this case, the indictment charges that Larry Saxton did knowingly obtain or exert unauthorized control over lawful United States currency. . . . Earlier today, the district attorney filed a motion with the Court in which he advised the Court that they had reviewed the indictment and the other evidence that he was proposing to offer in the case, the statement of the defendant and other evidence, and he advised the Court through his motion that he believed the proper wording should be, `Did knowingly obtain or exert unauthorized control over a check or money' and that wording in the indictment might be a fatal variance between what was alleged and what the proof in the trial of the case would be.
"And I have put the case to trial in order to find out exactly what the evidence is gonna be. The attorneys do not misrepresent anything to the Court, but sometimes the evidence when it comes from the stand is not exactly the way the attorneys think it is going to be and so I wanted to actually hear the evidence myself. As I understand the law, the law is, and we can all have our views about the law, but it is still the law. The law is that a check is not lawful currency of the United States. Lawful currency is what greenback is. That's lawful currency. A check is a check.
"I realize that you can take it to the bank and cash it and it becomes lawful currency, but in the form in which it was taken from the victim in this case, it was a check. It was not lawful currency at that time. It seems to make it sound like a strange sort of view; nevertheless the law is what the law is. I've got to go by the law, and I have ruled that there is a fatal variance in the indictment and the proof, the proof being that a check was taken and that a check is not lawful currency; therefore, the defendant did not knowingly obtain or exert unauthorized control over lawful United States currency. *Page 79 
 "And, therefore, as a matter of law, I have made a ruling that there is this fatal variance which results in a verdict in the case for the defendant. And so it is my judgment and I have directed a verdict because of this what we call a legal technicality, I directed a verdict in favor of the defendant; therefore, it will not be necessary for you to decide this case."
(R.96-97.)
In April 1997, the State obtained a two-count indictment charging Saxton with theft of the check (Count I) and theft of the currency received by cashing the check (Count II). See §13A-8-4, Ala. Code 1975. Saxton filed a pre-trial motion to dismiss the indictment on double jeopardy grounds. Following a hearing on the motion, the trial court granted Saxton's motion. In its order, the trial court stated that "a retrial of the defendant on an indictment containing the exact language of the earlier indictment under which the defendant's Motion For Directed Verdict was granted and the defendant thereby acquitted constitutes double jeopardy." (C.8.)
The State argues that because the trial court granted Saxton's motion for a judgment of acquittal based on a fatal variance between the indictment and the proof, and not on the sufficiency of the evidence, the principles of double jeopardy do not prohibit it from re-indicting and retrying Saxton.
 "`A fatal variance exists between an indictment alleging the theft of "lawful currency" and evidence showing the theft [of a check]. "[W]hen in this case the charge involved `currency' and the evidence established `[a check],' this was a fatal variance."'"
Delevie v. State, 686 So.2d 1283, 1284 (Ala.Cr.App. 1996) (citations omitted); see also Henderson v. State, 620 So.2d 169,170 (Ala.Cr.App. 1987) "`"Obviously, a check is not money," and in an indictment, an allegation of conversion of money will not cover a conversion of a check.'" Delevie, 686 So.2d at 1285. InDelevie, we remanded the case for a new trial because a fatal variance existed between the indictment and the proof offered during the first trial. Id. Similarly, if Saxton had been convicted in the first trial and we had determined that a fatal variance existed between the indictment and the proof offered at trial, we would have reversed his conviction and remanded the case for a new trial. Delevie, 686 So.2d at 1285; Henderson, 520 So.2d at 170; Ex parte Airhart, 477 So.2d 979, 981 (Ala. 1986).
Nonetheless, the trial court granted Saxton's motion for a judgment of acquittal. Double jeopardy principles may bar a second prosecution for the same offense after an acquittal. Statev. Randall, 669 So.2d 223, 227 (Ala.Cr.App. 1996). However, in Exparte Wood, the Alabama Supreme Court held that double jeopardy principles did not bar a re-trial of a defendant whose motion for a judgment of acquittal was granted based on a fatal variance between the indictment and the evidence the State presented.564 So.2d 860, 862 (Ala. 1990). In Wood, "evidence at trial proved the theft of a check and not [of] currency." Id. After the trial court granted Wood's motion for a judgment of acquittal based on fatal variance grounds, the State re-indicted the defendant for theft of a check. The defendant in Wood moved for dismissal based on the prohibition against double jeopardy, which the trial court denied. In holding that the trial court properly denied the defendant's motion for dismissal on double jeopardy grounds, the supreme court stated:
 "In reviewing double jeopardy claims, the identity of the offenses, not the act out of which the offenses arose, must be examined."
 "`"[T]he established test to which a plea of former jeopardy must be subjected is, whether the facts averred in the second indictment, if found to be true, would have warranted a conviction upon the first indictment. In other words, in determining whether both indictments charge the same offense, the test generally applied is that when the facts necessary to convict on the second prosecution would necessarily have convicted on the first, a final judgment will be a bar to the second; but if the facts which will convict on the second prosecution would not be sufficient to convict on the first, *Page 80 
then the first will not be a bar to the second."'
 "Wright v. (City of Montgomery, 477 So.2d 489, 490-91 (Ala.Cr.App. 1985) (citations omitted)."
Wood, 564 So.2d at 862.
Clearly, as in Wood, the evidence necessary to sustain a conviction for theft of currency would not be sufficient to sustain a conviction for theft of a check, and vice versa. Therefore, double jeopardy principles do not prohibit the State from re-indicting Saxton for the theft of the check. See Edwardsv. State, 480 So.2d 1259, 1262 (Ala.Cr.App. 1985) ("If, instead of continuing to a verdict, the trial is halted because the defendant refuses to consent to amending the indictment as to a material variance, then a new trial under a new, correct indictment is the proper procedure and is not double jeopardy."). However, because the first indictment charged Saxton with theft of currency, the State is barred on double jeopardy grounds from reindicting Saxton for the theft of currency. Accordingly, we reverse the judgment of the trial court dismissing Count I of the second indictment, affirm the judgment dismissing Count II of the second indictment, and remand this case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.