WELCH, Judge.
 

 David Ralph Harrison and John Draper were separately indicted for theft of property in the first degree, a violation of § 13A-8-3, Ala.Code 1975. Their cases were consolidated for trial, and both men were convicted. Harrison was sentenced to five years’ imprisonment. The trial court suspended the sentence and placed Harrison on five years’ probation. Harrison was ordered to pay $10,599.50 in restitution, $1,000 to the Victims Compensation Fund, and court costs.
 

 The evidence adduced at trial indicated the following. Deanco Auto Auction of Montgomery, Inc. (“Deanco”), is a compa
 
 *46
 
 ny that coordinates wholesale transactions between automobile dealers by conducting auctions. Usually, a dealer wanting to register an item for sale contacts Deanco and provides the company with a dealer’s license, a tax exemption, and a bond. A Deanco employee enters the information into Deanco’s computer system, and the dealer is assigned a number. The number is entered into a spiral notebook. The item, usually an automobile, is taken to the gate of Deanco’s auction lot where an employee enters the information regarding the item into the computer system, including a vehicle identification number (“VIN”), assigns the dealer’s number to the item, and parks the vehicle in the parking area until auction. Occasionally, Deanco allows an outside sales person to preregister the dealer and vehicle before the vehicle is delivered to the lot. Harrison was an outside sales person.
 

 On June 13, 2007, Harrison requested that a Deanco employee register Draper as a new dealer for an upcoming auction. Draper and Harrison were neighbors. Harrison stated that he would provide proper dealer information the next day. The employee registered Draper and entered his name and dealer number into the spiral notebook. On June 14, 2007, Harrison requested that an employee at the gate register a boat that would be arriving later. Harrison provided the employee with a VIN number, but the number appeared to be invalid. Harrison left and returned a short time later with another VIN number for the boat, which was successfully entered into the computer system.
 

 When managers Julie Tuttle and Kelly Terrell reviewed Deanco’s accounts receivable a few days later, they noticed a check on Deanco’s account had been issued in the amount of $21,199 that identified the purchaser as “QQQQQ.” (R. 22.) They were unable to locate any paperwork concerning the transaction. They contacted the controller, who verified that the check had already cleared the company’s bank account. Terrell determined that the check was payable to John Draper. Office supervisor Nicole Allen had issued the check and had given the check to Harrison. The employees could not locate a title to the boat. Deanco usually required the title before issuing a check. Terrell discovered a notation in the records to the effect that Harrison was to pick up the title. Records further showed that the buyer of the boat was listed as Dothan Motor Company. Terrell did not contact anyone at Dothan Motor Company at the time because she knew that the owner, Dan Smith, had died in an airplane crash the day of the sale.
 

 When Tuttle questioned Harrison about the transaction, Harrison denied John Draper, claimed he did not know anything about any money, and left. Several days later, Harrison telephoned Tuttle and asked her to call her boss and request that he stop the criminal proceedings. He denied doing anything wrong, but he did offer to pay back the money. The next day Tuttle informed Harrison that her boss had refused to stop the proceedings. Tuttle asked Harrison why he did what he did, and Harrison responded that he owed Draper money.
 

 Police interviewed Draper, who stated that he had previously purchased a Chris-Craft boat for $19,500 from someone named “Tommy” in Birmingham, that he did not have a bill of sale, that he never registered the boat, that he had made some repairs to the boat, that he took it to a parking lot in Montgomery and put a for sale sign on it, that someone named Dan called him indicating that he wanted to purchase the boat, that he met a man wearing a shirt bearing the name of Dean-co Auto Auction in the parking lot, that the
 
 *47
 
 man gave him a check from Deanco, and that Draper then left. When police interviewed Harrison, he told them that Dan Smith of Dothan Motor Company and Draper had met and had agreed on the sale and that they wanted the sale to go through Deanco so that the company could make a commission.
 

 Harrison contends that the trial court erred when it denied his motion for a judgment of acquittal because, he says, there was a fatal variance between the indictment, charging theft of currency or coinage, and the evidence offered at trial establishing theft of a check. The indictment in the instant case charged that Harrison
 

 “did knowingly obtain or exert unauthorized control over, or did knowingly obtain by deceptionf,] control over lawful currency and/or coinage of the United States of America, a better description of which is unknown to the Grand Jury, the property of Deanco Auto Auction, of some value in excess of $2,500.00 dollars, with intent to deprive the owner of the property, in violation of section 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
 

 (C. 6.)
 

 “ ‘ “A fatal variance exists between an indictment alleging the theft of ‘lawful currency’ and evidence showing the theft [of a check]. ‘[W]hen in this case the charge involved “currency” and the evidence established “[a check],” this was a fatal variance.’ ” ’
 

 “Delevie v. State,
 
 686 So.2d 1283, 1284 (Ala.Cr.App.1996) (citations omitted);
 
 see also Henderson v. State,
 
 520 So.2d 169, 170 (Ala.Cr.App.1987). ‘ “ ‘Obviously, a check is not money,’ and in an indictment, an allegation of conversion of money will not cover a conversion of a check.” ’
 
 Delevie,
 
 686 So.2d at 1285.”
 
 State v. Saxton,
 
 724 So.2d 77 (Ala.Crim.App.1998). See also
 
 Shubert v. State,
 
 488 So.2d 44 (Ala.Crim.App.1986) (finding a fatal variance between indictment charging that defendant stole $10,000 and proof at trial that check for $10,000 was fraudulently taken);
 
 Ex parte Airhart,
 
 477 So.2d 979 (Ala.1985) (finding a fatal variance between indictment alleging the theft of lawful currency and the evidence showing embezzlement of several checks).
 

 The State argues that there was no fatal variance because, it argues, when a check is deposited with a bank it is converted into currency. In support of its position its relies on
 
 Ex parte Brooks,
 
 562 So.2d 604 (Ala.1990).
 

 In
 
 Brooks,
 
 the Alabama Supreme Court held that an indictment charging Brooks with theft of currency did not suffer from fatal variance, even though a check was involved, where Brooks deposited the check, converted the check to currency, and then converted currency.
 
 Brooks
 
 involved an attorney who was depositing his clients’ settlement check into a trust account and subsequently withdrawing money from the account to pay personal obligations. We do not find that
 
 Brooks
 
 stands for the broad proposition that when a check is deposited it is converted into currency, thereby eliminating a fatal variance. Rather, the facts in
 
 Brooks
 
 indicated that it was not until the attorney improperly withdrew money from the trust account that the attorney exerted unauthorized control over the clients’ property. Thus, the attorney exerted unauthorized control over currency, not the check. In other words, there was never a theft of the check but a theft of the clients’ money from the trust account.
 

 In this case, Harrison exerted unauthorized control over a check. As is the case in many theft cases involving checks, the
 
 *48
 
 check was eventually cashed or deposited; however, cashing or depositing a check does not render the theft a theft involving currency. Here, the indictment charged theft of currency, but the evidence at trial established unauthorized control over a check. Thus, there was a fatal variance between the indictment and the evidence presented at trial.
 

 Because there was a fatal variance between the allegations in the indictment and the evidence presented at trial, we must reverse Harrison’s conviction and sentence. Because we are reversing on this issue, we forgo discussion of other allegations of error.
 

 REVERSED AND REMANDED.
 

 BASCHAB, P.J., and McMILLAN and SHAW, JJ., concur.
 

 WISE, J., dissents, without opinion.